## THE MINNESOTA LINSEED OIL COMPANY

### *vs.*

## L. R. PALMER, AND THE CITY OF MINNEAPOLIS.

A court of equity will grant to the party aggrieved relief against an assessment for a local improvement, which, on the face of the proceedings to impose it, is a valid lien on land, and extrinsic evidence is required to show its invalidity.

Where authority is conferred upon a municipal corporation by its charter, " to provide for the apportionment and assessment of *taxes for expenses incurred* in  *  * works" of public improvement, the power of the city to tax for such improvement is limited, as to the amount of the tax, and no power to tax for an amount, materially greater than the expenses incurred in the work, is conferred by the charter. A tax double the amount of the actual cost of such work or improvement, is void.

The provision of section 4 of chapter 5 of the city charter of Minneapolis, (*Sp. Laws* 1872, *pp.* 75, 76,) that no tax shall be invalid, because the amount levied shall exceed the amount required to be raised for the special purpose for which the same is levied, does not apply to a tax, levied upon specific blocks of land, for an improvement affecting such blocks only.

Where the charter makes no provision as to the mode in which the expenses of local improvements are to be ascertained, for the purpose of

Minnesota Linseed Oil Co. v. Palmer and City of Minneapolis.

taxation or assessment to pay for the same, the plaintiff, in an action of this kind, is not precluded from averring and showing, by proof *dehors* the record, the actual cost thereof, nor can the court, upon demurrer to the complaint, presume that the cost of the improvement appears upon the record of the proceedings; but,,for the purposes of the demurrer, the court must assume the truth of an allegation in the complaint, that such cost does not so appear.

The plaintiff in its 'complaint alleges that it is a corporation, duly organized, &c., that the defendant, Palmer, is treasurer of Hennepin county, that the defendant, the City of Minneapolis, is a municipal corporation, &c., and that the plaintiff is the owner of certain lots in block 107, in that city, having a frontage of three hundred and thirty feet on Washington avenue, between Rice street, (or Ninth avenue south,) and Smith street, (or Tenth avenue south.)

That the defendant, the city of Minneapolis, by its city council, claiming to act by and under authority of its charter, ordered and directed all the water mains and pipes, theretofore and originally laid in said city, to be lowered; and thereafter, to-wit: on the 30th August, 1872, the said city council duly adopted and published the following resolution, (which is set forth at length in the complaint.)   "*Resolved*, 1. That whenever the water mains may hereafter be extended in any direction in the city, and whenever said mains, previously laid, may have been relaid, or shall hereafter be relaid, the cost of said extension and relaying shall, in each case, be borne by the blocks touching the streets, along which said mains may be extended or relaid, to the extent of one dollar for each front foot of each of said blocks, fronting on said streets, the amount thus falling to each block to be paid by the whole block, each owner thereof paying alike, in proportion to his area, without regard to value.   *   *   *   4th. That the council does hereby levy and assess a tax of one dollar per front

470     CASES IN THE SUPREME COURT,

Minnesota Linseed Oil Co. v. Palmer and City of Minneapolis.

foot on each and all the blocks abutting upon the portions of the streets below mentioned, in accordance with the foregoing resolutions; * * * * so much of Washington avenue as lies * * between Eighth and Tenth avenues south."

That thereafter and prior to September 1, 1872, the city council did cause to be transmitted to the county auditor of said Hennepin county a copy of said resolutions, duly certified by the clerk of said city.

That during the month of July, 1872, the defendant, the City of Minneapolis, lowered all that portion of the water pipes or mains, belonging and appurtenant to the water works of said city, originally laid in the year 1870, by said city, upon and along Washington avenue, between Rice street, (or Ninth avenue south,) and Smith street, (or Tenth avenue south,) in said city, at an actual cost and expense of not exceeding the sum of $330.

That the frontage of said block 107 upon Washington avenue is 330 feet, and the frontage of block 114, upon the opposite side of Washington avenue, and opposite said block 107, is also 330 feet thereon.

That under and by virtue of said resolutions, said city council has actually levied and assessed the sum of $660, to-wit: $330 upon the said frontage of said block 107, and $330 upon the said frontage of said block 114, as and for the expense of so as aforesaid lowering said pipes along said portion of said Washington avenue, being the sum of one dollar per front foot upon each of said blocks, and * * has divided the sum of $330, so assessed, among all the lots in block 107, charging to each lot the sum of $33⅓, and has directed that said sum of $33⅓ be divided into three equal parts, and one part thereof be charged, levied and extended by said county auditor upon the tax rolls and duplicates of said county, in each of the years 1872, 1873, and 1874, against said lots, with

interest at the rate of seven per cent. per annum upon the same, as the special water main tax, for the purpose of paying for said work of lowering; and said lots were, by the direction of said city council, to be sold in case of non-payment of the same; that the city has assessed, in manner and for the purpose aforesaid, and the county auditor has levied and extended upon the tax duplicate, against each lot, the sum stated in the complaint, and threaten, in each of the years 1873, 1874, and 1875, to sell the said lands of plaintiff, upon non-payment of said tax by said plaintiff.

The complaint then states that the sum of one dollar per front foot, assessed upon said land, is largely in excess of the actual cost of said lowering of said water-pipe, fronting said block, and that the actual cost of said work, abutting said block 107 and said block 114, opposite thereto, did not exceed the sum of $330, and that one-half thereof, or the sum of $165, is the largest sum that should have been assessed against said block 107; * * * that the said special water main tax has been assessed and levied, as aforesaid, for the purpose of providing funds for the payment of the cost of lowering said pipe, as aforesaid, and for no other purpose, and that the water main, so lowered, has always been the property of the city.

The complaint further alleges a demand on the plaintiff, by the defendant, Palmer, as county treasurer, for the payment of the state, county, town and water main tax, upon the several lots in block 107, for the year 1872, amounting in all to $899.28, the water main tax being $105.33; that the plaintiff at the time of such demand refused to pay the water main tax, but made a proper tender to him of the amount of the other taxes, which he then refused and has ever since refused to accept, &c., and that the plaintiff has deposited the amount so tendered with the clerk of the court, &c. That the county

auditor has advertised said land for sale, as delinquent, for the taxes of 1872, and that the defendant Palmer, as county treasurer, threatens and is about to sell the same, on account of the non-payment, and for the collection of all the taxes, so assessed and demanded.

The complaint proceeds : That from the facts aforesaid, it appears that although the proceedings, resolutions and assesments   *   *   *   are and were apparently within the power of said council, and are upon their face valid, and creative of a valid lien, yet, by reason of the extrinsic matters and facts, as aforesaid, mentioned and pleaded, the said proceedings, resolutions and assessments of the said council, herein com-plained of, were and are, notwithstanding their said apparent validity, wholly void ; and that the sale of said lands,   *   * so as aforesaid threatened and now about to be made,   *   *   * will, unless restrained by the order of the court, operate to cast a cloud upon the plaintiff's title to said land   *   * and plaintiff will be greatly and irreparably injured thereby.

The prayer for relief is, that the said levy and assessment on plaintiff's land be declared null and void, for an injunction *pendente lite*, and a perpetual injunction upon the final hearing, to restrain the collection of the assessment and the sale of the land, and for general relief.

This appeal is taken by defendants from the order of the court of common pleas for Hennepin county, overruling their demurrer to the complaint.

A. N. MERRICK, for Appellants.

BEEBE & SHAW, for Respondent.

*By the Court.*—McMILLAN, CH. J.—This is an action in the nature of a suit in equity, in which the plaintiff seeks to ob-tain a decree, declaring void a certain tax assessed upon its

Minnesota Linseed Oil Co. v. Palmer and City of Minneapolis.

real estate, and awarding a perpetual injunction, enjoining the defendants from proceeding to sell the plaintiff's said real estate to satisfy the tax, and for such other and further relief as it may be entitled to, under the complaint.

To the general rule, that the correction of errors, mistakes, and abuses in the exercise of the powers of subordinate public jurisdictions, and in the official acts of public officers, is a matter of legal, and not equitable cognizance, three exceptions are recognized and established. First, where the proceedings in the subordinate tribunal, or the official acts of public officers, will necessarily lead to a multiplicity of suits. Second, where they lead, in their execution, to the commission of irreparable injury to the freehold. Third, where the adverse party's claim to the land is valid, upon the face of the instrument or proceedings sought to be set aside, and extrinsic facts are necessary to be proved, in order to establish the invalidity or illegality. *Scribner vs. Allen*, 12 *Minn.* 148, *and authorities cited.*

The present case must fall within the third of the above exceptions, if it comes within either of them. The claim to the land of the plaintiff, in this instance, is a lien thereon for the amount of taxes, levied and assessed by the city of Minneapolis, for a certain local improvement. If the levy of the tax is valid, it is a lien upon the land, which may be enforced by sale of the land, and conveyance thereof to the purchaser by a deed, which is *prima facie* evidence of a good and valid title in the grantee, his heirs and assigns. *Special Laws*, (*city charter,*) 1872, *chap.* 10, *sub. ch.* 5; *sub. ch.* 6 § 1; *sub. ch.* 8 § 20; *Gen. Stat. chap.* 11, §§ 115, 119, 122, 124, 127-129, 137-140, 142, 151-153.

The complaint, by a proper statement of facts, shows that the defendants have taken all the steps necessary to authorize a sale of the premises for such tax, and threaten to sell, and

the defendant, Palmer, is now about to sell the same, on account of the non-payment, and for the collection of the said tax, with other taxes stated in the complaint, and concerning which no question is presented in this case.

If, then, the proceedings are valid upon the face of the record, and their validity can only be shown by extrinsic facts, the lien of the tax constitutes a cloud upon the plaintiff's title, to remove which, and to set aside and enjoin all proceedings to enforce such lien, is the peculiar province of a court of equity. *Conkey vs. Dike,* 17 *Minn.* 463 ; *Scribner vs. Allen, supra ; Scott vs. Onderdonk,* 14 *N. Y.* 9 ; *Weller vs. St. Paul,* 5 *Minn.* 95 ; *Heywood vs. The City of Buffalo,* 14 *N. Y.* 534 ; *Ward vs. Dewey,* 16 *N. Y.* 519 ; *Crooke vs. Andrews,* 40 *N. Y.* 547.

The appellant, in his brief, does not question, in any manner, the position, that the complaint states facts, which show that the proceedings of the city of Minneapolis, in making the improvement, and levying and assessing the tax in question, are apparently within the authority of the city, and, upon the face of the record, valid. We therefore proceed to consider whether the complaint states extrinsic facts, showing that the tax is void.

It appears, from the complaint, that the purpose for which the tax was levied, was to pay the cost of lowering and relaying the water main on Washington avenue, between Rice street, or Ninth avenue south, and Smith street, or Tenth avenue south, in the city of Minneapolis. The charter of the city provides that " the city council shall have power,　*　*　as respects the west division of said city, a majority of the aldermen of that division concurring, to provide for the apportionment and assessment of taxes, for expenses incurred in　*　*　* works of either a general or local character, upon the whole division, or any portion thereof, without regard to ward lines,

or partly upon both, in such manner as may seem just, regard being had to the character of the improvement, and the benefits conferred." *Sp. Laws*, 1872, *chap.* 10, *sub. ch.* 8, *sec.* 20, *p.* 89.

The power of taxation, in a subordinate municipal corporation, exists only so far as it is conferred by legislative authority. The work for which the tax in this case was levied, was one of a local character, and the power of taxation in regard to it, given by the charter, is to tax for the expense incurred in it. There can be no doubt that the power of the city to tax for the improvement was limited, as to the amount of the tax, and that no power to tax for an amount materially greater than the expenses incurred in the work, is conferred by the charter. 2 *Dillon Mun. Corp. sec.* 607.

The complaint avers that the actual cost and expense of lowering and relaying the water main, on that portion of Washington avenue above mentioned, was three hundred and thirty dollars, and that the amount of tax actually levied and assessed for such purpose, of which the taxes complained of are part, was six hundred and sixty dollars, being just double the amount of the actual cost of the improvement. The tax was therefore void.

Section four of chapter five of the charter, is as follows: "Taxes may be levied by resolution of the city council, and no tax shall be invalid by reason of any informality in the manner of levying the same, nor because the amount levied shall exceed the amount required to be raised for the special purpose for which the same is levied; but in such case, the surplus shall, if the tax be a general tax, go into the general fund of the city; if it be a bond tax, it shall be kept and used for the future payment of principal and interest of the same class of bonds, or purchase thereof before due; if it be for improvements within either division of said city, it shall be kept

and used for further improvements in the same division, or used in paying the outstanding debts or obligations of the same division, as the city council, with the assent of the majority of the aldermen elected from such division, shall determine." *Sp. Laws,* 1872, *chap.* 10, *sub. ch.* 5, *sec.* 4, *pp.* 75, 76.

The provision of this section, that no tax shall be invalid, because the amount levied shall exceed the amount required to be raised for the special purpose for which the same is levied, does not apply to the tax in question. The terms of the section may perhaps include a general city tax, a "bond tax," and a tax for improvements in either division of the city, which is to be levied upon all the property of such division. This tax is of a character essentially different from either of these; it is a tax levied upon particular blocks, for an improvement, presumptively, at least, affecting directly only such blocks, and therefore is not within the provision of the section quoted.

But if it were within the letter of the section, it would clearly be unconstitutional for the legislature to authorize the levy of a tax exclusively upon a particular block or portion of a division of the city, to pay for an improvement to which all the property of such division should contribute. Such taxation would be grossly unequal, and therefore void, within section one of article nine of the state constitution.

Farther, the tax in this case is *void,* because no power was granted by the legislature to tax to a sum materially greater than the cost of the improvement, and therefore cannot be validated.

The charter makes no provision as to the mode in which the expenses of improvements of this character are to be ascertained. The plaintiff is therefore not precluded from averring and showing, by proof *dehors* the record, the actual cost thereof, nor can we presume that the cost of this improvement

appears upon the record of the proceedings; but for the purposes of this demurrer, we must assume the truth of the allegation in the complaint, that such cost does not so appear.

The only source of relief from the threatened sale and conveyance of his property, which the defendant has, is in chancery; and the only authority which can remove the cloud upon his title, created by the tax, apparently valid, but really void, is by invoking the interposition of a court of equity, as he has done.   Since the cloud of the lien exists, and the sale and conveyance of the land is threatened, a court of equity will not stay its intervention until the proceedings are consummated, and the existing injury increased, but will interpose at once, to remove the cloud, and prevent further injury.

The order overruling the demurrer is affirmed.