(Opinion published 52 N. W. Rep. 221.)

---

STATE *ex rel.* GEORGE McMULLEN *et al. vs.* DISTRICT COURT OF HENNEPIN COUNTY.

Argued May 11, 1892.   Decided May 20, 1892.

**Disqualified Commissioner to Assess Damages—Objection to, Waived by Laches.**

    In proceedings under a city charter to make a local improvement, such as opening or widening a street, an objection to the confirmation of the report of the commissioners appointed to appraise damages and benefits, on the ground of the disqualification of one of the commissioners, is analogous to an application to have a verdict set aside because of the disqualification of a juror; and as a general rule a party is not entitled to have the report set aside from the mere fact that he did not know of the disqualification until after the hearing, at least where the commission was appointed on his own application, and he had an opportunity of inquiring as to the qualifications of those proposed as commissioners. He ought to show that he made some investigation as to their qualifications, or give some excuse for not doing so.

*Certiorari* to the District Court of Hennepin county, upon the relation of George McMullen and Arthur McMullen. The return showed

that proceedings were begun in the City Council of Minneapolis to widen Hennepin Avenue eleven feet on each side from Tenth street to Lyndale Avenue, making it eighty-eight feet wide. Commissioners were appointed and appraised damages. Relators owned a lot and a half on the northwest corner of Hennepin Avenue and Twelfth street, and had a large brick building on it. They were awarded $3,000. They claimed $10,000, and filed objections, but the award was on July 24, 1891, confirmed by the City Council. Relators appealed to the District Court. New commissioners were there appointed, August 18, 1891. John Baxter was one of them. They qualified and heard evidence, and on September 3, 1891, reported, awarding relators the same sum. On notice to relators their objections to this report were on September 19, 1891, heard by the court, *Lochren*, J., and afterwards on March 15, 1892, the report was confirmed. On this hearing it was shown and admitted that the wife of Commissioner Baxter had inherited, as one of the heirs of Samuel Nettleton, one undivided seventh of a lot situated on Hennepin Avenue one hundred feet east of Tenth street; that her interest in this lot was assessed $50, and would be benefited by the improvement; and that relators did not know of, or discover, her ownership in this lot until after the award was made and filed in the District Court.

*Akers & Lancaster*, for relators.

Commissioner Baxter was not disinterested. His wife's ownership in land affected by this proceeding made him an interested party. Commissioners act in a judicial capacity, and must be disinterested. Baxter and his wife being interested, he was disqualified from serving as a commissioner. He having taken part in and signed the award, the proceeding is voidable, and the fact that a majority were qualified does not validate it. No man shall be judge in his own case. *Moses* v. *Julian*, 45 N. H. 52; *Stockwell* v. *Township Board of White Lake*, 22 Mich. 341; *Hall* v. *Thayer*, 105 Mass. 219; *Taylor* v. *County Com'rs*, 105 Mass. 225; *Gay* v. *Minot*, 3 Cush. 352; *Bacon, Appellant*, 7 Gray, 391; *State* v. *Crane*, 36 N. J. Law, 395; *Sanborn* v. *Fellows*, 22 N. H. 473; *Dimes* v. *Proprietors, etc.*, 3 H. L. Cas. 759; *Michigan Air Line Ry. Co.* v. *Barnes*, 40 Mich. 383.

The city charter, ch. 10, § 14, provides that any excess of damages over assessments shall be paid out of the ward improvement fund. Mrs. Baxter's property lies in the ward embracing this improvement. Any excess of assessments over damages will by the charter be credited to the ward fund, or be otherwise disposed of, as the City Council shall deem just to the persons upon whom the special assessment has been levied. *Minnesota Linseed Oil Co.* v. *Palmer*, 20 Minn. 468, (Gil. 424;) *Howell* v. *City of Buffalo*, 15 N. Y. 512.

*Robert D. Russell* and *David F. Simpson*, for respondent.

Relators insist that no man shall be a judge in his own cause. This principle is well established, but has no application in this case. *Sjoberg* v. *Nordin*, 26 Minn. 501; *Webster* v. *County of Washington*, Id. 220; *Road in Lower Windsor*, 29 Pa. St. 18; *In re Twenty-Sixth St.*, 12 Wend. 203.

The relators, having been present by counsel when the commissioners were appointed, and having assented to Mr. Baxter's appointment, should not now, after submitting their case and obtaining a report, be permitted to question the qualification of one of the commissioners. There is no showing made here by the relators of any diligence used by them to discover whether the commissioners were qualified to act or not. *Ipswich* v. *County Com'rs*, 10 Pick. 519; *State* v. *Wilson*, 17 Wis. 687; *Baldwin* v. *Calkins*, 10 Wend. 167; *Strang* v. *Beloit & M. R. Co.*, 16 Wis. 635; *Fox* v. *Hazelton*, 10 Pick. 275; *Walker* v. *Boston & M. R. Co.*, 3 Cush. 1; *People* v. *Taylor*, 34 Barb. 481; *Roanoke City* v. *Berkowitz*, 80 Va. 616.

MITCHELL, J. In proceedings under chapter ten (10) of the charter of the city of Minneapolis, to widen a part of Hennepin avenue, the relator and others having appealed from the action of the city council in confirming the report of the commissioners, the court, having confirmed the proceedings in other respects, appointed three commissioners, of whom John Baxter was one, to reappraise the damages and benefits of the several appellants. Upon the coming in of the report of these commissioners the relator, upon affidavits,

objected to its confirmation on several grounds. The court over-ruled his objections and confirmed the report. This action of the court is now sought to be reviewed on *certiorari.*

1. The objection based upon the alleged misconduct of one of the commissioners is, in our judgment, so entirely without substantial merit as not to require special consideration.

2. Another objection was that the amount of damages awarded to the relator was inadequate. These damages were for taking a strip 11 feet wide off the front of a lot abutting on the avenue, upon which was situated a valuable block of dwellings.

If we were to judge merely from the affidavit in behalf of relator as to the testimony introduced before the commissioners, the award might seem smaller than was justified by the evidence. But this affidavit does not purport to contain all the evidence. Moreover, its contents consist mostly of the estimates of certain experts as to the probable cost of the changes in the building, rendered necessary by taking the strip off the front of the lot. According to these estimates the cost of remodeling the building would somewhat exceed the amount of the award. But as the ultimate question was, how much would the value of the property be diminished by reason of the proposed taking? and as various elements would enter into the consideration of this question, including special benefits resulting from the proposed improvement, it is evident that the net damage to the property would not necessarily amount to as much as the cost of remodeling the building. As the court below remarked, the amount of damage to the property by reason of taking this strip was largely a matter of opinion, about which men of equal intelligence and honesty would naturally differ. It was the duty of the commissioners, after hearing the evidence of these experts, and giving to it the weight which they thought it deserved, to exercise their own judgment, in view of the character of the property, the condition in which it would be left, and all other facts before them bearing upon the question of the effect of the taking upon its value. They were not required to surrender their functions to the experts, and merely strike an average on their estimates. We could not hold that under the circumstances the trial judge erred in overrul-

v.50m.—2

ing the objection that the amount of the award was against the evidence.

3. The most serious question arises out of the alleged disqualification of Baxter, because of interest, to act as one of the commissioners. The mere fact that he was in favor of the improvement, or advocated its being made, or that he would, in common with the public generally, derive some indirect benefit from it, would not constitute any legal disqualification. To disqualify him, he must have had some direct private pecuniary interest in the result of the awards and assessments which he was required to make. *Webster* v. *County of Washington,* 26 Minn. 220, (2 N. W. Rep. 697;) *Sjoberg* v. *Nordin,* 26 Minn. 501, (5 N. W. Rep. 677.) Moreover, the commissioners had nothing to do with determining whether the improvement should be made. That matter rested entirely with the city council. The suggestion that a commissioner favorable to the improvement might be influenced by the consideration that, if the awards for damages should be increased, the city council might abandon the improvement, is too fanciful and speculative to be entitled to any weight.

The most substantial ground for claiming that Baxter was disqualified consists of the fact that a lot fronting on Hennepin avenue, just outside of the proposed improvement, of which his wife owned one undivided seventh, had been assessed $50 for the purpose of paying the expense of the improvement, making the assessment on her interest a few cents over $7. No appeal had been taken from this assessment, and the time for doing so had expired. Under the city charter, this assessment could not be increased by reason of any increase on appeal in the amount of the awards for damages; but it is suggested that Mrs. Baxter was interested in having these awards decreased, so as to produce an excess of assessments over damages. The city charter provides that such excess, if any, shall be credited to the ward improvement fund, or be otherwise disposed of as the city council shall deem most just to the persons upon whom such special assessment has been levied.

If this provision is valid, it is quite clear that the parties paying the assessment have no direct private interest in such excess. But

it is claimed that they have an absolute legal right to have this excess paid back to them. *Minnesota Linseed Oil Co.* v. *Palmer*, 20 Minn. 476, (Gil. 424;) Cooley, Tax'n, 665.

It is only upon this view of the law that it can by any possibility be maintained that Mrs. Baxter had any such interest in the amount of the awards as to disqualify her husband from acting as commissioner.   We do not find it necessary to determine whether this view is correct, but may assume for present purposes that he was disqualified, and that if the objection had been interposed at the time of his appointment, or even at any time prior to the hearing before the commissioners, the relator would have had an absolute legal right to insist that he should not be appointed, or that his appointment, if made, should be revoked, and some one else appointed in his place. But the interposition before trial or hearing of a challenge or objection to a juror or commissioner on the ground of his disqualification, and an application on this ground for a new trial (which this, in effect, was) after verdict on decision, stand upon a different footing. In the first the allowance of the challenge or objection, if the disqualification exists, is a matter of strict legal right, whereas the application for a new trial on that ground is a matter resting, within certain limitations, in the sound judicial discretion of the court.   In order that there may be an end of litigation, and that parties may not speculate on the decision being in their favor, and then raise the objection in case it is against them, the courts have always held that the party must be vigilant, and make the objection as soon as discovered; otherwise, he will be held to have waived it.   The rule is well settled that a petition for a new trial for extrinsic causes will not be sustained if the ground of it existed at the time of the trial, and was then known to the petitioner, or might have been known by him by using due diligence.   When a party applies for a new trial on any such ground, it ought to be made to appear, either from his affidavit or from the intrinsic nature of the case, that he was not guilty of any lack of vigilance.

In this case there was no showing of any kind, except the bare affidavit of the attorney that he and his clients had no knowledge or information of Baxter's wife's interest in the land affected by these pro-

ceedings until after the hearing before the commissioners, and that he (the attorney) first heard of it September 5th, which was two days after their report was filed. Waiving the point that the attorney could not well swear as to the mental condition of his client, it seems to us that there ought, under the circumstances, to have been some affirmative showing that the failure to sooner ascertain the fact was not owing to any lack of proper diligence.

Here was a proceeding which affected a large number of pieces of property, and consequently a large number of persons. The records of the proceedings already had showed what property was affected either by way of awards for damages or assessments for benefits, all of which were accessible to the appellants. The matter had been brought into court on their appeal, in which they were asking, among other things, for the appointment of a commission to reappraise their damages. They were present in court, as we must assume, and as the decision of the trial court states, and had an opportunity to object to the appointment of Baxter, but did not do so.

In proceedings of this kind, in which so many persons are interested, there is great danger, unless extreme vigilance is exercised, that somebody may be appointed commissioner who is related to or connected with some one of the many property owners directly affected by the proposed improvement. Now, while the parties have not the proposed commissioners before them to examine, as in the case of jurors, as to their qualifications, yet, in view of the nature of the proceedings, it is not asking too much of parties, especially where the commission is really being appointed on their motion, that when a name is proposed as commissioner, if they are not advised as to his qualification, and are not willing to take their chances on it, they should then and there make some investigation to ascertain the facts, or, if necessary, ask the court for time in which to do so. Moreover, if, at any time after the appointment, and before the day fixed for the hearing, a party should on further investigation ascertain that one of the commissioners was disqualified, he might doubtless apply to the court to revoke his appointment. It seems to us that it was incumbent on the appellants to show that they made some sort of investigation as to the qualifications of the commissioners, or show

some reasonable excuse for not having done so, and that it was not enough to state the bald fact that they did not know of the disqualification. Any less strict rule would place our cities in a very hazardous situation with reference to these proceedings for local improvements; for otherwise all that would be necessary to nullify the entire report of one of these commissions would be to show that one of the commissioners was related or connected, within certain degrees of consanguinity or affinity, to or with some person who had an interest in some piece of property affected by the proposed improvement, and that some other person interested in the improvement did not know that fact.

The order appealed from must be affirmed.

(Opinion published 52 N. W. Rep. 222.)