## STATE v. EMMA GRACE LEDBETER.[1]

May 20, 1910.

Nos. 16,572—(27).

**Disqualification of judge — relationship to attorney.**
Section 4098, R. L. 1905, relating to the disqualification of judges, con-

[1] Reported in 126 N. W. 477.

strued, and *held*, in accordance with Sjoberg v. Nordin, 26 Minn. 501, not to disqualify a judge from sitting in a case if he be related within the ninth degree to the attorney of either party.

Defendant, having been indicted and tried in the district court for Blue Earth county for the crime of murder in the first degree, was duly acquitted. Upon being subsequently indicted for the crime in the second degree and arraigned, she pleaded a former acquittal and jeopardy. To this plea the state demurred. The court, Quinn, J., acting in the place of Pfau, J., sustained the demurrer, and the case was certified to this court. Reversed and remanded.

*George T. Simpson*, Attorney General, *George W. Peterson*, Assistant Attorney General, *Walter A. Plymat*, County Attorney, and *Harrison L. Schmitt*, Special Assistant County Attorney, for the State.

Judge Pfau was legally and absolutely disqualified from presiding, sitting, or in any manner acting as judge at the former trial of this defendant. On account of the disqualification of the presiding judge in said cause, there was no trial before any legally constituted court. On account of the disqualification of the trial judge the court had no jurisdiction to try defendant under the first indictment. The trial, so called, of the defendant under that indictment, and the verdict and judgment rendered therein, are mere nullities, and absolutely void and of no effect, on account of lack of the jurisdiction in said court, as then constituted, to try the case. R. L. 1905, §§ 4098, 5390, 5391, 5394, 5395, 5397, 5398, 5399, 4170; Jordan v. Henry, 22 Minn. 245; Sjoberg v. Nordin, 26 Minn. 501; Oakley v. Aspinwall, 3 N. Y. 547; State v. Castleberry, 23 Ala. 85; People v. Connor, 142 N. Y. 130; Heydenfeldt v. Towns, 27 Ala. 423; People v. Ebey (Cal.) 93 Pac. 379; People v. De La Guerra, 24 Cal. 73; In re White, 37 Cal. 190; Buckingham v. Davis, 9 Md. 324; Cottle, Appellant, 5 Pick. 483; Coffin v. Cottle, 9 Pick. 287; Sigourney v. Sibley, 21 Pick. 101; Com. v. Peters, 12 Metc. (Mass.) 387; Gay v. Minot, 3 Cush. 352; Bacon, Appellant, 7 Gray, 791; Hall v. Thayer, 105 Mass. 219; Horton v. Howard, 79 Mich. 642; Davis v. Charlevoix, 155 Mich. 228; Stearns v. Wright, 51

N. H. 600, 608; Bedell v. Bailey, 58 N. H. 62; Moses v. Julian, 45 N. H. 52; January v. State, 36 Tex. Crim. App. 488; Abrams v. State, 31 Tex. Crim. App. 449.

A person charged with crime is not in jeopardy of punishment in a legal sense, until he is put on trial in a court of competent jurisdiction, presided over by a judge competent to preside in his case, upon a valid indictment and until a jury is duly impaneled and "charged with the defendant." State v. Sommers, 60 Minn. 90; People v. Connor, 142 N. Y. 130; 1 Bishop, New Crim. Law, 1020, 1028; 12 Cyc. 264; In re McClaskey, 2 Okla. 568; January v. State, supra; Campbell v. People, 109 Ill. 565; Ex parte Graham, 43 Tex. Crim. App. 463; Const. (Minn.) art. 1, § 7; R. L. 1905, § 4792; Com. v. Peters, supra; Ball v. United States, 163 U. S. 662; State v. Cross, 44 W. Va. 315.

*C. J. Laurisch, A. R. Pfau, jr.,* and *S. B. Wilson,* for respondent.

In the absence of a statute positively prohibiting a judge from taking jurisdiction of a cause in which he is disqualified, the general rule is that his acts therein are only voidable, whether his disqualification arises (1) from interest: Hayes v. Collier, 47 Ala. 726; Hine v. Hussey, 45 Ala. 496; Stearns v. Wright, 51 N. H. 600; Moses v. Julian, 45 N. H. 52; Forest v. Doolittle, 54 W. Va. 211; (2) from relationship: Salm v. State, 89 Ala. 56; Trawick v. Trawick, 67 Ala. 271; Plowman v. Henderson, 59 Ala. 559; Hayes v. Collier, supra; Hine v. Hussey, supra; Stearns v. Wright, supra; Hall v. Wilson, 14 Ala. 295; State v. Ross, 118 Mo. 23; Moses v. Julian, supra; Paddock v. Wells, 2 Barb. Ch. 331; In re Taber, 13 S. D. 62; (3) from having been counsel: Hayes v. Collier, supra; Hine v. Hussey, supra; County v. Cheney, 57 Iowa, 160; Fly v. Noble, 37 La. An. 667; Thomas v. State, 6 Miss. 20; (4) or from having presided at a former trial: State v. Hartley, 75 Conn. 104; Fowler v. Brooks, 64 N. H. 423.

If objections are not made before proceeding with the trial and action taken by the judge therein, there is a waiver of the right to object to him (1) on account of relationship to a party to a suit: Hall v. Wilson, supra; Pettigrew v. Washington, 43 Ark. 33;

Church v. Norwich, Kirby, 140; Berry v. State, 117 Ga. 15; Brown v. Holland, 111 Ga. 817; Shope v. State, 106 Ga. 226; Stone v. Marion, 78 Iowa, 14; Wilson v. Smith (Ky.) 38 S. W. 870; Ricks v. Gantt, 35 La. An. 920; Crowell v. Londonderry, 63 N. H. 42; Ex parte Hilton, 64 S. C. 201; Posey v. Eaton, 9 Lea, 500; Clark v. Schofield, 28 N. Brunsw. 231; (2) or having been counsel: Platt v. New York, 26 Conn. 544; Groton v. Hurlburt, 22 Conn. 178; Jewett v. Miller, 12 Iowa, 85; Ellsworth v. Moore, 5 Iowa, 486; Posey v. Eaton, supra. The right to object on account of prejudice is lost by making a motion in the cause. Hutchinson v. Manchester, 73 N. H. 271, 60 Atl. 1011.

START, C. J.

On November 13, 1909, the grand jury of the county of Blue Earth returned to the district court of that county an indictment, sufficient in form and substance, against the defendant herein, whereby she was accused of the crime of murder in the first degree, in that, on May 4, 1909, within such county, she did, with the premeditated design to effect the death of Holland J. Ledbeter, feloniously kill and murder him. She was duly arraigned and required to plead to such indictment, and pleaded not guilty to the offense charged therein. She was then placed on trial for the offense, and the jury, on December 31, 1909, returned a verdict of not guilty. Thereupon the court adjudged that she be discharged. The judge who presided at the defendant's trial was the father of one of her attorneys, who acted for her during the trial. Such fact was known at all times before, at, and during the trial to the assistant attorney general and associate counsel, who represented the state and conducted the trial on its behalf; but no objection whatever was made to the competency of the judge or to his presiding at the trial.

On February 7, 1910, the grand jury returned to the district court another indictment against the defendant, whereby she was accused of the crime of murder in the second degree. The crime charged in the first indictment was the identical crime charged in the second indictment. Upon being arraigned and required to plead to the second indictment, she entered the plea of former acquittal and

111 M.—8.

jeopardy, alleging the facts we have stated. The state demurred to the plea, and the demurrer was sustained by the trial court, on the ground that the judge who presided at the first trial was disqualified to sit on the trial of the defendant on the first indictment, therefore the court was without jurisdiction, and the trial, verdict of not guilty, and judgment of acquittal were absolutely void, hence the defendant was never in jeopardy. The question as to the sufficiency of the plea of former jeopardy was certified to this court pursuant to R. L. 1905, § 5409.

The record presents the questions whether the trial court was disqualified, and, if so, are the verdict and judgment of acquittal absolutely void. If the judge was not disqualified, then the second question is here immaterial.

If the judge was disqualified in this case, it must have been by virtue of some clear and positive statute; for at common law, while a judge could not sit in his own case, nor in one in which he had a pecuniary interest, yet his relationship, by affinity or consanguinity, to a party or his attorney, was not a disqualification. It is the contention of the state that a judge is expressly disqualified by statute to sit in any case if he be related by consanguinity or affinity within the ninth degree to any attorney in the case, and if he sits in such case all proceedings therein, including the judgment, are absolutely void. The statute relied upon is R. L. 1905, § 4098, which reads as follows:

"No judge shall sit in any cause, except to hear a motion to change the venue, if he be interested in its determination, or if he might be excluded for bias from acting therein as a juror. If he be the only judge of the court or district, he shall grant a change of the venue whenever, upon a motion therefor, his interest or bias shall be made to appear, unless before the motion is heard the governor shall have assigned another judge to try such cause: Provided, that such sole judge may order the venue changed, upon his own motion, whenever he shall deem it improper to sit in the cause."

It would seem—at least, such is the view of the writer—that if a judge who is disqualified by the statute to sit in a particular case should do so, the judgment would not be void, but only voidable;

for the statute seems to provide that the remedy in such cases must be by motion, and that a party may not keep silent, and, if the result of the trial is unfavorable to him, proceed as if there never had been any trial. The injustice of any other construction of the statute is illustrated by the record in this case. It is no answer to this suggested construction that the state could not review the decision of the court on the motion if unfavorable to it, for the state has no right of review in any criminal case.

However, without deciding whether the suggested construction be correct, we pass to the consideration of the primary question whether the statute disqualifies a judge from sitting in every case in which he might be excluded for bias from acting therein as a juror. A juror may be excluded from acting as such in any given case by a peremptory challenge, or for general disqualification, or for implied bias, or for actual bias. The statute under consideration, by the term "for bias," necessarily eliminates the exclusion of a juror by a peremptory challenge and a challenge for general disqualification. The question is, then, whether the statute disqualifies a judge in every case in which he might be excluded for bias, implied or actual. There are more than twenty causes of challenge for implied bias, including relationship in the ninth degree to the attorney of either party, and, if the offense be punishable by death, the entertaining of such conscientious opinions as would prevent the juror finding the defendant guilty. A juror may be excluded for any one of the twenty causes. He may also be excluded for actual bias, whenever it is shown to the satisfaction of the triers that the state of his mind in reference to the case or to either party is such that he cannot try the issue impartially and without prejudice to the substantial rights of the challenging party. R. L. 1905, §§ 5390, 5391. Now, if by virtue of the statute here in question a judge is disqualified from sitting in any cause if he might be excluded from acting as a juror therein for either implied or actual bias, if he does sit in the case, even with the consent of the parties, the trial is a moot one, and the judgment absolutely void, then the statute is a snare, a menace to the constitutional rights of the citizens, the honor of families, and the legitimacy of innocent children.

If such be the proper construction of the statute, then, in a criminal case, if the judge would be subject to a challenge as a juror therein for implied or actual bias, the defendant, if he is acquitted, may again be put on his trial for the same offense, or, if convicted, he may be discharged from prison on habeas corpus; and, further, where a divorce is granted by a judge so disqualified, and if either party remarries, the marriage is void, the children, if any, are illegitimate, and an innocent woman is a mother, but never a wife. A construction of the statute which would thus lead to legal and social chaos ought not to be accepted, unless the clear, certain, and positive language of the statute makes its acceptance imperative.

The legislative and judicial history of the statute indicates its correct construction. Section 4 of chapter 64, G. S. 1878, provided that: "No judge of any of the courts of record of this state shall sit in any cause in which he is interested either directly or indirectly, or in which he would be excluded from sitting as a juror: Provided, however, that such interest shall not disqualify such judge from ordering a change of venue in any such cause; but it shall be the duty of such judge, on the application of any party desiring a change of venue in such action, to order the same, upon a proper showing of such interest on the part of the judge, as in other cases of change of venue." When this statute was enacted, the causes for which a juror might be excluded were substantially the same as they are now. R. L. 1905, §§ 5390, 5391. This court, in the case of Sjoberg v. Nordin, 26 Minn. 501, 5 N. W. 677, construed the statute of 1878 to which we have referred, and held that the only cause of disqualification of a judge reached by the statute was a pecuniary interest in the event of the action to be tried, and that a judge was not thereby disqualified from sitting in a case where his son was attorney for one of the parties. The scope and reason of the decision are as follows:

"It was evidently not the purpose of this section to prohibit a judge from sitting in a cause, unless it is one in which he can sit or act as a juror; for this would prevent the trial of all actions where only issues of law are involved. Its meaning is obviously the same as though it read: 'No judge * * * shall sit in any cause in which he is

interested directly or indirectly, or in which, by reason of such interest, he would be excluded from sitting as a juror.' A pecuniary interest in the event of the action is the cause of disqualification intended to be reached by the section, and not a mere bias resulting from partiality or prejudice in favor or against either of the parties. * * * In reaching the conclusion arrived at in this case, the court is not to be understood as considering or passing upon the question whether, under our constitution, a district judge is or is not disqualified from sitting in a cause by reason of consanguinity or affinity to either of the parties to an action. The extent of the holding is that the statute in question does not reach such a case, nor the case of any relationship of that character between the judge and any of the attorneys of the parties."

This decision was followed in the case of State v. District Court of Hennepin County, 50 Minn. 14, 18, 52 N. W. 222, and cited with approval in State v. Gardner, 88 Minn. 130, 92 N. W. 529.

No change, affecting its construction, was made in the statute construed in the Sjoberg case, prior to the adoption of R. L. 1905, § 4098, except that by Laws 1901, p. 17, c. 16, § 1, it was amended by inserting therein before the clause, "or in which he would be excluded from sitting as a juror," the words "or in which he is or has been attorney or counsel for either party or any person interested in the determination of the action." It is clear that this amendment did not abrogate the rule of the Sjoberg case, and that it did not disqualify a judge in every case in which he might be excluded as a juror for bias, actual or implied. It follows that when the revised laws were adopted the then existing statute did not disqualify a judge in all cases, or at all, except as held in the Sjoberg case. The only substantial change in the language of the existing statute, made by the revised laws, was to insert therein after the word "excluded" the words "for bias," so that the clause now reads, "or if he might be excluded for bias from acting therein as a juror." Here we reach the crucial question: Did the legislature intend by the insertion of the two words to radically change the existing law, and thereby open wide the door for the evils we have indicated? The presumption is that no change in the existing law was intended by the revision, unless

the contrary clearly appears from its language. State v. Stroschein, 99 Minn. 248, 109 N. W. 235; Becklin v. Becklin, 99 Minn. 307, 109 N. W. 243; Evans v. City of Redwood Falls, 103 Minn. 314, 317, 115 N. W. 200.

Is it clear from the language of R. L. 1905, § 4098, that the legislature intended materially to change the existing statute, the meaning of which had been settled by the decisions of this court for a quarter of a century? We answer the question in the negative.

It is significant in this connection that section 4098 was passed by the legislature as the revision commissioners reported it, and that they did not in their report suggest that any change had been made in the existing statute. It is only fair to the commissioners to assume that, if they had intended by the words "for bias" radically to change the existing statute, they would have called attention to it in their report, as they did in other cases, or at least used the words "for implied bias." If the three words had been used, instead of the two, there would be some plausible basis for claiming that the intention was only to disqualify a judge from sitting in any cause if he be interested in its determination, or if he might be excluded for implied bias from acting therein as a juror. The fact, however, remains that the words used were "for bias," and that the section cannot be amended by judicial construction so as to read "for implied bias." The section in question must be construed either as radically changing the existing statute, and disqualifying a judge whenever he might be excluded from acting as a juror for either actual or implied bias, or as a substantial re-enactment and continuation of the existing statute as construed by the court. The acceptance of the first would result in the evils and absurdities indicated. We cannot so construe the section, for it is reasonably clear, from its language and its legislative and judicial history, that such was not the intention of the legislature.

It follows that the other alternative construction of the section must be accepted, and we so construe it. In reaching this conclusion we are not unmindful that the words "for bias" were presumably added for some purpose. What the precise purpose was we are unable to say, unless it was for technical accuracy by eliminating any possible suggestion of the exclusion of a juror by a peremptory challenge, or

for general disqualification. This suggestion is far more reasonable than the assumption that the words were used to disqualify a judge if he might be excluded for actual bias, for example, if the triers in the exercise of a sound discretion might find that by reason of an opinion as to the facts or law of the case he would not impartially try it, or for implied bias, for example, if, in a captial case, he was conscientiously opposed to the death penalty.

We accordingly hold that R. L. 1905, § 4098, does not disqualify a judge from sitting in a case where he is related within the ninth degree to the attorney of either party, that the defendant's plea of former acquittal and jeopardy was sufficient in law and fact, and that the order sustaining the demurrer of the state to the plea must be reversed, and the cause remanded, with direction to discharge the defendant.

So ordered.