The German State Bank v. The Northwestern Water and Light Company, Appellant.

| | |
|---|---|
| 104 | 717 |
| 112 | 314 |
| 112 | 319 |
| 104 | 717 |
| 113 | 198 |
| 104 | 717 |
| 118 | 432 |
| 104 | 717 |
| 131 | 19 |
| 104 | 717 |
| 136 | 496 |

**Contracts:** DEBT OF ANOTHER. A promise by a stockholder of a corporation to a purchaser of his stock to pay an indebtedness of the corporation, so as to make its earnings available to payment of dividends and subsequent obligations, cannot be enforced by the corporation.

**Pledge.** A stockholder in a corporation who pledges his stock to another person to secure the payment of a debt due by the corporation may, with the consent of the pledgee, withdraw the stock pledged, although the corporation objects thereto.

**Same:** *Rights of debtor.* A debtor cannot complain of a decree that its property be first exhausted to satisfy the judgment before proceeding against property of another voluntarily pledged for the debt

*Appeal from Plymouth District Court.*—HON. F. R. Gaynor, Judge.

Wednesday, April 6, 1898.

PLAINTIFFS bring this action upon two promissory notes, executed by the defendant the Northwestern Water & Light Company. These notes were secured by certain shares of stock of said water and light company, which were deposited with plaintiff. The shares were owned by J. H. Winchell, who, as president of the water and light company, executed the notes, and were by him transferred to plaintiff, as collateral security for the payment of the notes. The first answer of the water and light company denies a part of the indebtedness claimed. By an amendment to its petition, plaintiff states that said Winchell deposited, as collateral security for the payment of said notes, eighty shares of stock in said defendant company; that thereafter Winchell, by written contract, sold and transferred to one J. F. Rogers, four hundred and thirty-nine shares of stock in the defendant company, and, as a part consideration for said transaction, Winchell agreed in writing with Rogers to pay all indebtedness of defendant company except its mortgage debt of sixty thousand dollars. Plaintiff alleges that it has accepted the benefit of such contract, and asks that Winchell be made a defendant, and that it have judgment against him, as well as against the water and light company. The water and light company filed a cross-petition, making plaintiff, Winchell, and one M. W. Richey, defendants. It recites the agreement of Winchell with Rogers, whereby the former agreed to pay the water and light company's indebtedness. It states further the pledge by Winchell of his shares of stock to plaintiff, to secure the notes of the water and light company. It claims that it has accepted and is entitled to the benefit of Winchell's promise to Rogers; and it is then alleged that, with the consent of Winchell, plaintiff has transferred the shares of stock it held to said M. W. Richey. It prays that Winchell may

be considered the principal debtor to plaintiff, and that it be held only a surety, and that Winchell's property, including said shares of stock, be first exhausted before plaintiff be allowed to proceed against the property of cross-petitioner. Said Richey answers also, claiming that he gave a valuable consideration for the stock, and says, in effect, that he took the same subject to plaintiff's claim thereto. He pleads also an estoppel, the details of which we need not consider. There was a reply by the water and light company to Richey's answer, and then was made this stipulation: "It is hereby stipulated between the parties to the above-entitled cause that judgment may be entered in said cause on the first and second counts of the petition herein filed in favor of the German State Bank, and against the Northwestern Water & Light Company, for the sum of four thousand nine hundred and fifty dollars, costs and attorney's fees, to be paid by the plaintiff. It is further stipulated that execution in said cause shall be stayed, without bond or further proceedings, until the trial and termination of the issues joined in the amendment to the petition in said cause and the cross-petition and answer thereto; and that in case it is adjudged and ordered by the court that plaintiff first exhaust certain eighty shares of stock of the Northwestern Water & Light Company, held by plaintiff as collateral security of the idebtedness sued on in this action, that said stock shall be first sold, and the proceeds of said sale applied on said indebtedness, before levy shall be made upon the property of the defendant Northwestern Water & Light Company. Dated this twentieth day of May, 1896. German State Bank, by John Zurawrki, Vice Pres. Sammis & Scott, Attorneys for Defendant Northwestern Water & Light Company." The judgment below awarded plaintiff a recovery for the stipulated amount, dismissed the cross-petition of the water and light company, and

ordered that plaintiff exhaust the property of defendant water and light company before proceeding against the shares of stock assigned to Richey. From this judgment the water and light company appeals.— *Affirmed.*

*Sammis & Scott* for appellant.

*Zink & Roseberry* for appellee Richey.

*P. Farrell* for appellee Winchell.

WATERMAN, J.—The question to be determined, as we have extracted it from this volume of pleadings and multiplicity of claims, is, in its statement at least, a very simple one. It is this: How far, if at all, is the liability of the water and light company affected by the contract between Winchell and Rogers? The provisions of this contract, so far as are material here, are as follows: "This agreement, made and entered into and executed in duplicate this seventeenth day of May, A. D. 1894, by and between J. H. Winchell and J. F. Rogers, both of Le Mars, Iowa, witnesseth: *First.* That the said J. H. Winchell agrees to sell and transfer to the said J. F. Rogers four hundred thirty-nine and one-half shares of the stock of the Northwestern Water & Light Company, of Le Mars, Iowa, at and for the sum of thirty thousand dollars, which stock is to be transferred to the said Rogers upon the execution and delivery of this contract; and the transfer of the same shall carry with it the right to have and receive from the said company the full amount of all dividends to be paid thereon by the company from and after the first day of May, 1894. * * * *Fifth.* And the said Winchell also agrees and covenants that he will pay or cause to be paid all indebtedness of the said company except the sum of sixty thousand dollars,

its present mortgage debt, so that all earnings of the said company from and after the first day of May, 1894, will be available to pay its obligations and dividends to accrue thereafter."

II. The claim of the company is that, by reason of this contract, its status towards plaintiff was changed; that it has ceased to be the principal debtor, and is now only a surety for Winchell. We know of no principle of law by which the relation of defendant company to plaintiff could be changed without the latter's assent. *James v. Day*, 37 Iowa, 166. The cases cited by appellant to establish its claim that it now occupies the position of a surety only, are not in point. They are all instances of sales by a mortgagor of mortgaged real estate to one who either takes subject to the mortgage or expressly assumes to pay it. The general rule in such cases is that the real estate is the primary fund for the payment of the debt; that the original mortgagor, if he pays, is entitled to subrogation; and that, because of these facts, he occupies, after the sale of the premises, the position of a surety to the extent of the value of the mortgaged property. This rule, however, it would seem, has once been refused recognition in this state. *Corbett v. Waterman*, 11 Iowa, 87. But, even if it be conceded that the doctrine of which we have spoken should be held to prevail here, it would afford no support to appellant's claim. We shall attempt to show that it had no interest in or connection with the contract between Winchell and Rogers.

III. It is said that the agreement between Winchell and Rogers was made for appellant's benefit, and therefore it can take advantage of it. We think Winchell's promise to pay the debts of the water and light company was made for Roger's benefit, and not for that of appellant or any other person. It was nothing more than an agreement to protect the stocks sold, in Rogers' hands. As bearing somewhat on

the mattter, we cite *Peacock v. Williams*, 98 N. C. 324 (4 S. E. Rep. 550). If Winchell had owned all of the stock, and had transferred the whole of it to Rogers under this agreement, we hardly think it would be claimed that the water and light company, which would then have no interest distinct from that of its sole owner, could assert rights under Winchell's promise, especially if Rogers made no complaint, and Rogers is not a party to this action. The trial court held that plaintiff could sue upon Winchell's promise as made for its benefit, and it was given a judgment against him. Winchell does not appeal; so this action of the court must stand. In what we have to say further, if this holding of the trial court is questioned, it is done only as necessarily incident to a discussion of the extent of Winchell's liability on his promise. It is true that if a person, upon lawful consideration, received from another, promise to pay money to a third person, the latter may, under ordinary circumstances, maintain an action upon the promise, as made for his benefit. But it does not follow that, if two persons agree that one of them shall pay to a third a debt owing by a fourth, the latter would have any right under such an agreement; and that is the case we have here. If it be accepted that the bank could take advantage of Winchell's promise, it is by no means a necessary sequence that the water and light company could do so; for, though it might derive advantage from the performance of the contract, that is not enough. The promise is not made to it, either directly or indirectly. Originally, the rule was that, in order to maintain *assumpsit*, the consideration must move from the party seeking to enforce the promise. In time this was modified so that privity of promise was sufficient, even if there was no privity of consideration. But this rule has some qualifications. No man will be held liable in law to different parties for the same cause of action.

The principle is, therefore, confined to cases where the person for whose benefit the promise is made has the sole exclusive interest in its performance.     *Treat v. Stanton*, 14 Conn. 452; *Blymire v. Boitle*, 6 Watts, 182. In the case at bar it is claimed that appellant, plaintiff, and Rogers, are interested in the performance of Winchell's promise; and, to give effect to the argument made here, we should have to hold that each in his own right has a cause of action against Winchell on this ground. Another qualification, it has been said is this: If A. promise B. to pay C. a sum of money, C. can sue upon the promise only in the event that B. was indebted to him. *Farlow v. Kemp*, 7 Blackford, 544. In other words, Rogers owed nothing to either the bank or appellant. When Winchell promised to pay something to or for them, it being a gratuity on Rogers' part, he alone would have a right of action on such promise. This rule, doutbless, would not prevail in a case where the doctrine of trust was applicable; as where money or property is given another for delivery to a third person. A very full and exhaustive consideration of this whole subject will be found in the note to *Vadakin v. Soper*, 2 Am. Lead. Cas. 163 *et seq*.     As tending to show that something more is necessary to give a right of action on a promise than the mere fact that one would be benefited by its performance, we cite *Davis v. Waterworks Co.*, 54 Iowa, 59; *Lorillard v. Clyde*, 122 N. Y. 498; *Chung Kee v. Davidson*, 73 Cal. 522 (15 Pac. Rep. 100). Let us suppose that Rogers did not see fit to claim any rights under the agreement with Winchell, but was willing to let his interest in defendant company stand good for its debts; on what principle could appellant complain? This, so far as the record discloses, is the exact situation in the case.

IV.    Appellant cannot complain of the provision in the decree that plaintiff shall first exhaust its prop-

erty before proceeding against the stock assigned to Richey. So far as appears, Winchell voluntarily pledged his stock to secure appellant's debt. He had a right, with the consent of the pledgee, to withdraw it if he chose, or to make any other disposition of it that he thought fit. The bank consenting, he pledged it to Richey, subject, however, to the bank's claim. This was his right. As between the bank and Richey, it was proper enough to hold that the former, having a claim upon two funds, should first exhaust that one which the latter could not take. The judgment of the trial court is AFFIRMED.