CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant, v. CITY OF OTTUMWA et al., Appellees, KEOKUK AND DES MOINES RAILWAY COMPANY, Appellant.

**Paving Tax:** STREET ABUTTING ON RAILROAD RIGHT OF WAY: *Easements and taxation.* Code 1873, section 466, authorizing cities to pave and curb streets and to levy a special tax on lots and parcels of land fronting thereon to pay the expenses thereof, does not authorize the levy of a special assessment on a railroad right of way, which had been secured by condemnation proceedings, for the expense of paving a street on which it abuts, since such right of way is a mere easement in the land.

WATERMAN and LADD, JJ., dissenting.

RAILROADS OCCUPYING STREET: *Construction of statute.* Acts the Twenty-fifth General Assembly, chapter 7, section 12, which provides that an assessment against any railroad or street railway for the paving of any street shall be a lien on its entire tract situated within the limits of the city making the assessment, does not authorize a city to levy a special assessment against a railroad company for paving a street on which its right of way abuts, since such act applies only to railroads occupying such streets.

REAL ESTATE USED FOR ROAD BEDS: *Construction of statute.* Code 1873, section 809, providing that no real estate used by a railway corporation for road beds shall be included in the assessment to individuals nor to the adjacent property, but that all such real estate shall be deemed to be the property of such company for the purpose of taxation, does not authorize a city to levy a special assessment on a railway right of way to pave an abutting street, since the statute relates to taxation for general governmental purposes, and does not confer the power to levy special assessments.

MISTAKE: *Notice of assessment.* Code 1873, section 466, provides that a mistake in the name of the owner of property shall not vitiate the lien of assessments thereon. Sections 478 and 479 provide that defect or irregularity of a city or its officers in making a special assessment, will not defeat a recovery thereon by the city or the person to whom it directs the payment therefor to be made, if the court is satisfied the work done is properly chargeable to the property. *Held,* that a

special assessment on a railroad belonging to the D. R. Co., but operated under lease by the R. Co., was not invalid for failure to give notice to the D. Co. when a notice correctly describing the property was given to the R. Co.

CONTRACT BY LEASE TO PAY TAXES: *Judgment against lessee for taxes.* Where a corporation owns a railroad which is operated by another company under a lease by which the latter is liable for all taxes and special assessments which may be assessed against the property, it is error to render a personal judgment against such lessee for the amount of a special assessment against the property, since the provision is for the sole benefit of the lessor.

WATERMAN and LADD, J. J. dissenting.

**Appeal:** OBJECTION BELOW. Where an objection that a special assessment ordinance is invalid, in that it authorizes an assessment based on the frontage of the abutting property, and not on the benefits conferred, is not raised in the trial court, it will not be considered on appeal.

*Appeal from Wapello District Court.*—HON. M. A. ROBERTS, Judge.

TUESDAY, OCTOBER 23, 1900.

SUIT in equity to restrain the collection of a special assessment made by the city against the right of way of the Keokuk & Des Moines Railway for paving and curbing a street on which the right of way abuts. Plaintiff is using the right of way under lease from the Keokuk & Des Moines Railway Company, and the latter company was made a party defendant after a demurrer was sustained to the petition grounded on the proposition that it was a necessary party. The trial court dismissed the petition, and gave judgment against both railway companies for the amount of the assessment, and these companies appeal.—*Reversed.*

*Geo. W. Seevers, Carroll Wright,* and *Robert Mather,* for appellant Chicago, R. I. & P. Ry. Co. *Carroll Wright,* for appellant Keokuk & D. M. Ry. Co.

McNett & Tisdale and W. W. Epps, for appellees city of Ottumwa and its officers. E. M. Sharon, for appellees Edward Walsh Co.

Deemer, J.—The case was tried on an agreed statement of facts, from which we gather the following: The Keokuk & Des Moines Railway Company acquired by condemnation proceedings a right of way across certain lots in the city of Ottumwa abutting on Main street. This right of way was used by the Chicago, Rock Island & Pacific Railway Company at the time the assessment in question was levied under a lease from the Keokuk & Des Moines Company, terminating December 19, 1923, by the terms of which the Rock Island Company agreed to pay "all lawful taxes and assessments of value made of the property after the commencement of the lease." In the year 1894 the city council of the city of Ottumwa, by resolution, ordered the paving and curbing of East Main street, and in 1895 a contract therefor was entered into by the city with the defendant the Edward Walsh Company. The paving and curbing was to extend along Main street, and adjacent to the right of way, 716½ feet, and was to be 33 feet in width between the curbs. The right of way was 3 or 4 feet from the south curb, and extended for the entire distance named. The property on the north side of the street was divided into lots and blocks, and was owned by various persons. By the terms of the contract the construction company undertook to keep the improvement in repair for the term of seven years. Pursuant to contract, the Walsh Company made the improvement, and after the completion of the work the city engineer made a plat thereof, in which he assessed the cost of 7 feet in width to a street railway company that occupied the south side of the street, not far from the curb, with its track, and of 13 feet in width for the entire distance to the Rock Island Railway Company and the right of way. The balance of 13 feet was

assessed against the property lying on the north side of the street under the front-foot rule. Nothing was allowed the railway company for street intersections. No notice was given the Rock Island Company of the intent to assess any portion of the cost of the improvement against it, save that its name was included on the plat made by the city engineer, and no notice of any kind was given the Keokuk Company. On June 25, 1895, the Rock Island Company served the city and the contractor with notice to the effect that it would contest the right of either to charge any portion of the cost against the right of way occupied by it. July 15th the city council accepted the work, and approved the assessment made by the city engineer. Thereafter notice was given directed generally to property holders, and referring to the engineer's plat, as follows: "Take notice that there is now on file in the office of the city clerk at the city hall in the city of Ottumwa, Iowa, a plat of paving districts Nos. 12 and 49. Paving district No. twelve (12) consists of East Main street from the east side of Birch street to the west side of Ash street. Paving district No. forty-nine (49) consists of that portion of Fifth street from the east line of Court street to the west line of Jefferson street, in Ottumwa, Iowa. Said plat, among other things, shows the separate lots and parcels of ground abutting thereon subject to assessment of said improvement, the number of front feet abutting thereon, the owners thereof, the amount of assessment proposed to be made against each of the said lots and parcels of ground, and the owner thereof." On August 5th, and before final ratification and approval of the assessment, the Rock Island Company filed a protest against the same, stating its reasons therefor. Thereafter the council approved the assessment, ordered it certified to the county auditor, and later issued certificates of assessment to the construction company. Plaintiff then brought this suit to restrain the collection of the assessment. The Keokuk & Des Moines Company was made a party de-

fendant, as heretofore stated. The trial court dismissed the petition, and rendered judgment against both companies for the amount of the assessment, with 10 per cent. interest, and costs of collection, and made the same a lien on the right of way of the Keokuk Company. There was but a single railway track located on the right of way, and this is in a cut of from three to seven feet below the street level. The strip of ground between the south curb and the north line of the right of way, of three or four feet in width, is so occupied with, telegraph, electric railway poles, etc., that a sidewalk cannot be built thereon, and it is not used by foot passengers. Main street does not lead to the freight depot of either railway company, but travelers may take it in going to the passenger depot. The main passenger depot in the city is within half a block of Main street, and there is no other street between it and the depot. Main street is, however, one of the principal streets in the defendant city. These facts are recited at this time in view of the contention made by the railway companies to the effect that the paving was of no benefit to them, or to their right of way or property, and that the assessment was without authority of law. The main points contended for are: *First*, that the right of way is not subject to special assessment; *second*, that no lien can be established against a right of way secured by condemnation proceedings, and that no sale thereof can be made on judicial process; *third*, that the statute and ordinances charging the cost of the improvement under the front-foot rule, and without regard to benefits, are unconstitutional; *fourth*, that no benefits were conferred by the improvement; *fifth*, that plaintiff company is not liable for the cost of the improvement, because it is a mere lessee of the right of way; *sixth*, that because no notice was ever given the Keokuk Company of the assessment against its property, or of the proceedings connected therewith, no judgment can be rendered against it; *seventh*, that the court cannot cure any errors in the assess-

ment, and had no power to enter judgment against any one not a party to the original proceedings; and, *eighth,* that the allowance of interest and collection charges was erroneous. Such of these points as fairly arise on the record we will consider in the order stated.

The first and most important—aside from the constitutional—question relates to the right of a city to assess the cost of paving and curbing against the right of way of a railway company acquired by condemnation proceedings.

No citation of authorities is needed in support of the fundamental principle that the right of a municipality to levy special assessments depends on statutory enactment, and that it has no existence unless there be a valid statute conferring it. But see *Polk County Sav. Bank v. State,* 69 Iowa, 24; *In re Second Ave. Church,* 66 N. Y. 395 *Niklaus v. Conkling,* 118 Ind. 289 (20 N. E. Rep. 797. General authority to levy taxes for municipal purposes is insufficient to confer the power, and a statute conferring such power is strictly construed in favor of the person against whom the assessment is levied. See cases last above cited and *Hager v. City of Burlington,* 42 Iowa, 661; *Reed v. City of Toledo,* 18 Ohio, 161; *Starr v. City of Burlington,* 45 Iowa, 87; *City Council v. Murphy,* 79 Ga. 101 (3 S. E. Rep. 326); *Becroft v. City of Council Bluffs,* 63 Iowa, 646. Nevertheless, when express power is given, substantial compliance with the statute is all that is required. *McNamara v. Estes,* 22 Iowa, 246.. In the further discussion of the proposition regard must be had of the essential difference between a tax levied for governmental purposes and a special assessment founded on the theory of benefits conferred. *Illinois Cent. R. Co. v. City of Decatur,* 13 S. C. 293; *Town of Macon v. Patty,* 57 Miss. 378; *City of Fairfield v. Ratcliff,* 20 Iowa, 396. The foundation of the power to levy special assessments is, no doubt, the general taxing power of the state, and not the police power, or the right of eminent domain. *Warren v. Henly,*

31 Iowa, 31; *Molz v. City of Detroit,* 18 Mich. 494; *Allen v. Drew,* 44 Vt. 174; *Keith v. Bingham,* 100 Mo. 300 (13 S. W. Rep. 683); *In 're Centre St.* 115 Pa. Sup. 247 (8 Atl. Rep. 56). But the whole theory of special assessments is based on the doctrine that the property against which they are levied derives some special benefit from the improvement. *Rich v. City of Chicago,* 152 Ill. Sup. 18 (38 N. E. Rep. 255), and cases cited in Judge Elliott's work on Railroads (volume 2, p. 1100).

With these elementary propositions settled, we now turn to our statute, and find that at the time the assessment was levied it authorized cities to pave and curb any highway or alley therein, and to levy a special tax on the "lots and parcels of land fronting on the highway" to pay the expense of such improvement. Code 1873, section 466. See, also, Acts Twenty-third General Assembly chapter 14, sections 10, 11, and Acts Twenty-fifth General Assembly chapter 7. The ordinance passed by the defendant city in virtue of the power thus conferred, so far as material, reads as follows: "The proportion of the cost chargeable to the property owners for such improvements shall be ascertained and assessed by the city council against each owner and lot or parcel of land abutting, fronting upon, or adjacent to said improvement in proportion to the number of front feet. The city engineer shall also report to the council the number of front feet fronting on, or abutting on, or adjacent to such improvement, together with the names of the owners, and the number of front feet owned by each as nearly as can be ascertained, and the amount chargeable to each separate lot or parcel of ground." This was the power conferred by the legislature, and made effective by ordinance; and it was to charge the expense against each owner, and lot or parcel of land abutting on the improvement, with the cost thereof. Is a railroad right of way acquired by condemnation proceedings either a lot or parcel of land subject to

assessment? Appellees rely on *City of Muscatine v. Chicago, R. I. & P. Ry. Co.*, 79 Iowa, 645, as supporting the affirmative of the proposition; while appellants with equal confidence rely on the same case reported in 88 Iowa, 291, when it was before this court on a second appeal. The exact question does not seem to have been raised when the case was first before the court. From the statement of facts in the fourth division of the opinion it appears that the railroad company acquired title to the lots and lands occupied by it through a grant from the city, and by purchase; that it had absolute title to a large part of the property, and an easement in the remainder; and that the land was occupied with defendant's railroad track, station houses, turntables, and other improvements. A part of the land had at one time been a public street, but the public had ceased to use it, and right of occupancy was conferred by the city on the defendant railway. The court, through Beck, J., said: "The defendant, the perpetual possessor of the land, is the owner who must respond to all demands made in the exercise of the authority of taxation"; citing some cases. When the case was before us the second time, the court said, speaking through Robinson, J.,: "That portion of the paving is adjacent to the land concerning which it was held on the former appeal that assessments on account thereof should be paid by defendant," referring to certain property owned by defendant, and used as before stated. The writer of the opinion further emphasizes this thought in the first division of the second opinion. In the third division of that opinion the writer further said: "$1,746.30 is for paving west of that in front of its property already considered. * * * That portion of the paving to which we now refer was done adjacent to land over which defendant had the right to lay its track, but to which it did not have title. * * * The charter of plaintiff authorized it to require the owner of lots adjacent to a street to pave it, and not the owner of a mere easement in the lots. The general statute is to the

same effect"—citing *Koons v. Lucas,* 52 Iowa, 181. It is apparent that the original case did not decide the point now under consideration, for if it had, it would have been the law of the case, whether right or wrong, and would have been followed on the second appeal. That the court did not consider the question involved on the first appeal is clear, for in the first division of the second opinion the decision on the first appeal with reference to the property involved therein was held *res adjudicata,* and to be followed on the second appeal. It must be admitted that *Koons v. Lucas,* 52 Iowa, 181, cited in support of the second opinion does not directly sustain it. In that case the railway tracks were laid on the street, and not on a right of way adjacent thereto; but the rule of construction established on the second appeal of the *City of Muscatine Case* seems to have some support in the *Koons Case.* Of the cases cited in support of the principle announced in the first opinion, *Cummins v. Railroad Co.,* 63 Iowa, 397, and *Hollingsworth v. Railroad Co.,* 63 Iowa, 443, merely hold that in estimating damages in condemnation proceedings the jury might properly treat the case as if the owner was divested of all his interest in the land, for the reason that the easement created thereby would be presumed to be perpetual. In both cases it is said that the owner retained the fee, and that under certain circumstances it would revert to plaintiff or his grantee. Surely, these cases do not count for much in favor of either party to this contention. In the other case—*Railroad Co. v. Spearman,* 12 Iowa, 112—the railroad company owned certain depot grounds in the city of Mount Pleasant that were about to be sold to satisfy a tax levied by the city for the purpose of constructing a sidewalk adjoining said property. It acquired its title from the patent owners for depot purposes, and the property was used for that purpose at the time the tax was levied. This property was held liable for the tax under then existing laws which made "all property in the state, belonging to

any bank or company subject to taxation." By section 15 of the Acts of 1856 the defendant city was given the right to levy taxes on all taxable property within its boundaries, and by section 16 of the same act it was authorized to build sidewalks, and assess the expense on the owners of contiguous lots, "which shall have the effect of a special tax levied on their property." This decision is manifestly in accord with both opinions in the *City of Muscatine Case*, and it is not an authority for either of the parties to this appeal. There the railroad company was the owner of the lots by purchase, as in the *City of Muscatine Case*, and the assessment was held properly levied.

From this view of our cases it would seem to follow that the last opinion in the *City of Muscatine Case* is the only one which is really decisive of the question now under consideration. That expressly holds that it is the owner of the lots or lands adjacent to the street who is subject to the tax, and not the owner of a mere easement in or over the property. Following the general rules heretofore announced, it is difficult to arrive at any other conclusion. The statute must receive a strict construction, and, unless it authorizes the levy of an assessment on mere easements, the right does not exist. The owner of the lots still has the fee title. He has been deprived of the use of 50 feet off the end thereof, in virtue of the condemnation proceedings, but this use may terminate at any time by nonuser or abandonment. A mere easement is "neither a lot nor a parcel of land." The statute provides that "words and phrases are to be construed according to the context and the approved usage of the language." Section 45, par. 2, Code 1873. It will hardly be claimed that, according to the approved usage of language, the owner of an easement is the owner of a lot or parcel of land. We do not overlook the decisions heretofore cited holding that the easement is presumed to be permanent and perpetual, and that

the landowner has, as a rule, little of value in the land condemned; but no case in this state has ever held that a railway by condemnation proceedings acquired ownership of the land itself. For the purpose of assessing damages it has been so treated in some cases, but for no other purpose (save general taxation), as we understand it. We may well assume that the legislature, in passing the acts in question, did not intend that railways' rights of way should be assessed for paving and curbing, for the reason that such rights, used solely for the laying of tracks, would not, as a general rule, be benefited in any manner whatever by the paving or curbing; and, if any argument were needed to enforce this thought, it is to be found in the facts of this case, which show that it was of no benefit whatever to the right of way. A different question arises where the property is used for depot grounds and other like purposes. On that point we express no opinion, for it does not arise in the instant case. The new Code, as we understand it, authorizes assessments against rights of way or easements of railway companies (see section 968); at least special charter cities are authorized to make such assessments. Appellees contend, however, that the latter part of section 12 of chapter 7 of the Acts of the Twenty-fifth General Assembly authorizes the levy of the assessment. It reads as follows: "An assessment against any railroad or street railway for the paving of any street shall be a first and paramount lien upon the entire track of said railroad or street railway in the limits of the city making such assessments." That manifestly has reference to railroads and street railways on and over the streets. See sections 10 and 11 of the same act. They are too long to be set out at length, and we need only say that they authorize an assessment of a certain part of the expense of paving to street railways or railroads "upon the streets" ordered paved. They also rely on section 809 of the Code of 1873, found in the chapter relating to general revenues of the state. It

reads as follows: "No real estate used by railway corporations for roadbeds shall be included in the assessment to individuals nor the adjacent property, but all such real estate shall be deemed to be the property of such companies for the purpose of taxation. Nor shall real estate occupied for and used as a public highway be assessed and taxed as part of the adjacent lands whence the same was taken for such public purpose." Found in the chapter relating to taxation for governmental purposes, it affords little or no light on the question before us. Indeed, it is almost universally held that general power to levy taxes for municipal purposes is not broad enough to confer the right to levy special assessments for local improvements. *Oil Co. v. Palmer*, 20 Minn. 468 (Gil. 424); *Green v. Ward*, 82 Va. 324; *City of Fairfield v. Ratcliff*, 20 Iowa, 396. Moreover, there is nothing in the section quoted that confers power on a municipality to levy special assessments on such property as is involved in this litigation. The distinction between taxation and the power to levy special assessments, already pointed out, is important when we consider the effect to be given the statute relied upon. In our opinion, it has no bearing on the proposition before us except it be as an aid in the construction of the statute and ordinance under consideration. That statute uses the words "owner of lot or lots or parcels of land," and there is nothing to show that a mere easement was intended. The second opinion in the *City of Muscatine Case* seems to be decisive of the main point. Authorities from other states are conflicting. Wisconsin, Michigan, Pennsylvania, Missouri, and Connecticut seem to hold that a railroad right of way cannot be assessed for local improvements. Various reasons are given for these holdings, and the leading case in support of the conclusion is *City of Philadelphia v. Philadelphia R. Co.*, 33 Pa. St. 41. See, also, *City of Bridgeport v. New Haven R. Co.*, 36 Conn. 255. On the other hand the supreme courts of Kentucky, New Jersey, Illinois, Ohio,

California, and Indiana hold that under the statutes of
their respective states such right of way is assessable for
local improvements. *Railroad Co. v. Connolly,* 10 Ohio St.
159, seems to be the leading case on this side of the propo-
sition. See, also, *Illinois Cent. R. Co. v. City of Decatur.*
126 Ill. 92 (18 N. E. Rep. 315, 1 L. R. A. 613). We will
not take the time nor space needed to review these authorities.
Some of them are based on .the peculiar language of the
statutes construed, while others proceed on the broad ground
that such rights are subject to special assessments. Recon-
ciliation of the cases is utterly impossible, and we content
ourselves with arraying the states on either side of the ques-
tion. There is a valuable note to *Chicago, M. & St. P. R.*
*Co. v. City of Milwaukee,* 89 Wis. 506 (28 L. R. A. 249,
s. c. 62 N. W. 417), to which reference is made. It ought
to be said generally, however, that in New Jersey a show-
ing of special benefits must be made, even under a statute
authorizing the assessment (see *State v. City of Elizabeth,*
37 N. J. Law, 330); and in Indiana the question is left
somewhat in doubt by *Louisville Ry. Co. v. State,* 122 Ind.
443 (24 N. E. Rep. 350). Nearly all the cases hold that
property of a railroad company used for warehouses, de-
pots, and other like purposes is assessable for local im-
provements; the reason for this being that such property is
benefited by the improvement, while the right of way oc-
cupied simply by the tracks of the company can receive no
benefit from the improvement. It need only be added that
the evidence in this case indisputably shows that the right
of way received no benefit from the paving and curbing of
the street. The question of the right to sell a fragment of
the right of way, with its ties and tracks, is one of much
difficulty, and it is differently answered by the courts of
the country. A majority in point of numbers hold that it
cannot be done, and for that reason that the lien of an
assessment thereon is invalid. See *Railroad Co. v. Doe,*
114 U. S. 350 (5 Sup. Ct. Rep. 869, 29 L. Ed. 136); *Gue*

v. *Water Co.*, 24 How. 257 (16 L. Ed. 635); *Chicago, M. & St. P. Ry. Co, v. City of Milwaukee*, 89 Wis. 506 (62 N. W. Rep. 417, 28 L. R. A. 249); *People v. Gilon*, 126 N. Y. 147 (27 N. E. Rep. 409). But see, also, *City of Ludlow v. Trustees of Cincinnati S. R. Co.*, 78 Ky. 357, and *Railroad Co. v. Connolly, supra.* Holding, as we do, that the statute does not confer the power of assessment on the municipality, we need not pronounce definitely on this point.

II. Further, it is said that the statutes and ordinances under consideration are unconstitutional and void, because of the arbitrary assessment per front foot, and not according to benefits. That question does not seem to have been raised by the pleadings, or presented to the lower court, and we will not consider it.

III. Again, it is said that no benefits resulted to the right of way, or to the corporation owning or occupying the same, and that for this reason the assessment was invalid. If that were the only question in the case, we would be inclined to hold with appellants' contention that, as there was no benefit whatsoever, the assessment was, for that reason alone, invalid. There are, of course, some objections to this conclusion, and it is best perhaps, that we express no decided conviction on the subject, for it seems to be held by courts of high authority that the legislature has power to authorize the assessment of railway rights of way for local improvements. *In re County Com'rs of Hampshire County*, 143 Mass. 424 (9 N. E. Rep. 756). That question is also left open for further consideration when it properly arises.

IV. The Rock Island Company was simply a lessee of the property of the Keokuk & Des Moines Railroad, yet a personal judgment was entered against it, and it was the only party notified of the assessment. By the terms of its lease the Rock Island Company agreed to pay all taxes and assessments of value made on the property, and because of this it was held personally

liable to the contractor for the assessment. This holding is complained of. Is the promise made in the lease such an one as the city or the contractors may enforce? That interrogatory seems to be answered in the negative by *German State Bank v. Northwestern Water & Light Co.,* 104 Iowa, 717; *Davis v. Waterworks Co.,* 54 Iowa, 59; and *Messenger v. Votaw,* 75 Iowa, 225. At the time the promise was made there was no indebtedness from the Des Moines Company, to any one. The contract was solely for the benefit of the Des Moines Company, and there was no privity between the city or the contractor and the Rock Island Company. As said in the *German State Bank Case,* "The principle that one may sue upon a promise made to another for his benefit is, therefore, confined to cases where the person for whose benefit the promise is made has the sole exclusive interest in its performance." Had the assessment been lawful, the court was not authorized to render judgment against the Rock Island Company.

V. Further, it is contended that, as no notice was given the Des Moines Company, the assessment was invalid. The notice properly described the property, and was directed to the Rock Island Company. No doubt this was because general taxes had been paid by that company. As we understand it, there was nothing more than a mistake in name. The statute under which the assessment was made says that "a mistake in the name of the owner shall not vitiate the lien," and that the plat must show the names (so far as practicable) of the several owners. Sections 478 and 479 of the Code of 1873 also provided, in substance, that the municipality, or the person to whom it has directed payment to be made, is entitled to recover if the trial court is satisfied that the work has been done or material furnished, which according to the true intent of the act, would be chargeable upon the lot or land through or by which the street, alley, or highway improved

passed, to the extent of the proper proportion of the value of the work or materials which would be chargeable on such lot or land, notwithstanding any informalities, irregularities, or defect in such municipal corporation or any of its officers. *Kendig v. Knight,* 60 Iowa, 33; *Amery v. City of Keokuk,* 72 Iowa, 704; *Tuttle v. Polk,* 92 Iowa, 447; and *Dittoe v. City of Davenport,* 74 Iowa, 66—seem to sustain appellees' contention on this point. This is not a reassessment, as contended by appellants.

· VI.   The other points argued need not be considered, as they are not important. There should be a decree enjoining the collection of the tax from the railroad companies, and the cause will be remanded for that purpose—REVERSED.

WATERMAN, J. (dissenting).—The rule that the owner of the fee is liable for a special assessment levied against an abutting railway right of way across his land is so inequitable that I cannot conceive such result to have been intended by the general assembly. It puts the burden of paying for the improvement on one who has no beneficial interest in the real estate, leaving the present possessor, whose right in the property is practically perpetual, exempt from any liability therefor. Section 1344, Code 1897, which is but a reenactment of a previous statute, provides: "No real estate used by railway corporations for roadbeds shall be included in the assessment to individuals of the adjacent property, but all such real estate shall be the property of the companies, for the purpose of taxation." While this section is found in the chapter relating to ordinary taxes, it announces, as a general principle, that railways are the owners of the land in their rights of way for purposes of taxation. Although the general power to levy taxes does not confer the right to impose special assessments for local improvements, yet a general definition of who shall be

deemed the owner of a certain kind of property for the purposes of taxation applies to all kinds of taxes. We must look further to find the authority to levy this assessment. We start, then, with the principle established, that the right of way is to be treated as land, and the railway company is deemed its owner; and we next find that the city had authority, as stated by the majority, to levy the cost of this improvement on "the lots and lands fronting on the highway." This power was made effective by the ordinance set out in the foregoing opinion. In the case of *City of Muscatine v. Chicago, R. I. & P. Ry Co.*, 79 Iowa, 645—being the first appeal of that case—the facts as stated show that the railway company had a right of way only over a portion of the property sought to be assessed. The company resisted payment of the tax in part on the ground set up in the case at bar, viz.: that it was not the owner of the land. On this issue this court said: "If any one held title to the land upon which defendant acquired the easement, it was valueless, for defendant had the right of the perpetual possession and enjoyment of the land. It would be absurd to say that the owner of such title is subject to taxation of any character upon the land, and that the owner of the perpetual possession is not. The spirit of our laws will not permit such a thing. The defendant, the perpetual possessor of the land, is the owner, who must respond to all demands made in the exercise of the authority of taxation. * * * As the defendant in this case was in the occupancy of the land with right of perpetual possession, it is to be regarded as the owner, and liable for the taxes thereof." This holding does not seem to have been specially rested upon the statute we have set out, but is announced as a general principle of law, and in support of it the court cites *Railroad Co. v. Spearman*, 12 Iowa, 112; *Cummins v. Railroad Co.*, 63 Iowa, 398; *Hollingsworth v. Railroad Co.*, 63 Iowa, 443. On the second appeal no attempt was, or properly could have been, made to question this doctrine.

It was the same case in every respect, a second time before the court, and, right or wrong, the first opinion announced the law which governed it. *Drake v. Railway Co.,* 70 Iowa, 59; and cases cited. But I cannot think the rule a wrong one, and I do not understand the majority to overrule the first case. I may say further that I am unable to comprehend the distinction made on this second appeal between that part of the right of way of which it is said the railway was the owner (that is, to which it had obtained deeds) and that part in which it is spoken of as having only an easement, (that is, which it had condemned). A deed to a railway company of land for a right of way ordinarily conveys only an easement. *Brown v. Young,* 69 Iowa, 625; Elliott Railroads, section 972. What the railway company in that case held by condemnation, and what it obtained by deed for its right of way, should have been treated alike. All should have been exempt, or all liable. But the opinion holds the company liable on the deeded lands, and exempts it on those condemned. Outside our own state there is ample authority for holding that a railroad right of way is assessable for improvements of this kind. *Chicago & N. W. R. Co. v. Village of Elmhurst,* 165 Ill. Sup. 148 (46 N. E. Rep. 437); Elliott Railroads, section 786; *Illinois Cent. R. Co. v. City of Decatur,* 126 Ill. 92 (18 N. E. Rep. 315, 1 L. R. A. 613) (this case was affirmed on appeal to the supreme court of the United States, 147 U. S., 190, 13 Sup. Rep. 293, 37 L. Ed. 132); *Chicago & A. R. Co. v. City of Joilet,* 153 Ill., 649 (39 N. E. Rep. 1077); *Railway Co. v. Connolly,* 10 Ohio St. 164; *New York, L. E. & W. R. Co. v. Marion County Com'rs,* 48 Ohio Sup. 249 (27 N. E. Rep. 548); *Railway Co. v. Hanna,* 68 Ind., 562; *Paterson & H. R. Co. v. City of Passaic,* 54 N. J. Law, 340 (23 Atl. Rep. 945); *New Haven v. Fair Haven & W. R. Co.,* 38 Conn. 422; *Atchison, T. & S. F. R. Co. v. Peterson,* 58 Kan. Sup. 818 (51 Pac. Rep. 290); *Appeal of North Branch Ry. Co.,* 32 Cal. 499; *City of Ludlow v. Trustees*

*of Cincinnati S. R. Co.,* 78 Ky. 357; *London & N. W. Ry. Co. v. Vestry of Parish of St. Pancras,* 17 Law T. (N. S.) 654. These cases perhaps sufficiently answer the argument of the majority that a right of way is not land, within the meaning of the statute, and that the railway company derived no benefit from the improvement. In the case against *Connolly, supra,* it is said: "The company, to advance its own interests, has seen fit to appropriate to its own use grounds within the corporate limits of the city of Toledo, and over which the city had the power of making assessments to defray the expense of local improvements; and why should not the company be held to have taken it *cum onere?* A citizen would hardly claim exemption because he had devoted his lot to uses which the improvements could not in any way advance, and we see no good reason why a railroad company should be permitted to do so." To escape the result of this reasoning, the majority holds that the fee owner, who has been deprived of possession, control, and all beneficial interest, is liable to defray the expense of the improvement; and it may well be asked, how is he, or how can he be, benefited? Furthermore, I may say the question of benefits was in issue in the trial court, and the fact was found against plaintiff. There is no ground shown for our interference with that finding. So, too, I may add that the authorities generally hold that the land upon which a railway depot is located is benefited by the improvement of an adjacent street. See, for instance, Elliott Railroads, section 785; *City of Muscatine v. Chicago, R. I. & P. Ry. Co.,* 88 Iowa, 291. Now, a depot is only useful because of the right of way. Any benefit to defendants' depot property necessarily would affect the value of the right of way. There are many cases to be found holding that the right of way of a railway company is not subject to assessments for street improvements. But in determining this conflict we must take into consideration the statutory provision quoted (section 1344, Code). Aside from this statute, however, the rule stated has support in the

cited cases and we should be influenced by the demands of manifest justice, rather than by a count of cases. That the right to impose such a tax is just seems to me apparent without argument. The burden borne by other citizens should, under similar circumstances, be shared by the railway companies. I do not accord any weight to the matter of what may be called legislative construction, as embodied in section 968, Code 1897, which authorizes cities under special charters to assess rights of way of railways for street improvements. This but expresses in terms the law that before existed by implication, for the city of Muscatine was under a special charter when the cause of action arose which was involved in the two appeals to which reference has been made. How the lien given the city in this case is to be enforced, I need not inquire. If the right of way cannot be sold, payment may be secured out of other property of the debtors. *Railway Co. v Boney*, 117 Ind. 501 (20 N. E. Rep. 432); *Railway Co. v. State*, 122 Ind. 443 (24 N. E. Rep. 350).

II. With reference to the personal judgment against plaintiff the majority holds the trial court was without authority to render it, and the case of *German State Bank v. Northwestern Water & Light Co.*, 104 Iowa, 717, together with two other cases from this court, are relied upon to sustain the position. The *German State Bank Case* was quite different in its facts from the one at bar. There one person promised another, to whom he had sold stock in a corporation, to protect the stock in the purchaser's hands against debts owed by the corporation to third parties. In the case of *Davis v. Waterworks Co.*, 54 Iowa, 59, also cited, the third person, while benefited by the promise, had no direct interest in it. This is an important distinction. See 7 Am. & Eng. Enc. Law, 107. In the third case— *Messenger v. Votaw*—there was a sale of real estate subject to a mortgage upon which the grantee agreed to pay interest, he having received money therefor. The right of the creditor to sue on the agreement, while spoken of, was not in the

case. It could not have been meant to hold that a purchaser of mortgaged premises, who agrees with the mortgagor to pay the mortgage debt, is not liable to the mortgage creditor on the promise. The converse of the proposition is elementary, and sustained by so many decisions of this court that I refer to the digest for a citation of cases. In the case at bar the agreement was a part of the contract of lease, and the payment of taxes and assessments was in the nature of rent. I think the case comes clearly within the doctrine announced in the following cases heretofore decided by this court: *Johnson v. Collins,* 14 Iowa, 63; *Johnson v. Knapp,* 36 Iowa, 616; *Rice v. Savery,* 22 Iowa, 470; *Gooden v. Rayl,* 85 Iowa, 592. The facts involved make this case much akin to those referred to, in which the purchaser of mortgaged real estate assumes and agrees to pay off the incumbrance. The lessor in the present case would have had no right of action under this promise as against plaintiff without first paying the assessment, and then his right would have been only to sue for money paid to plaintiff's use. *Cassady v. Hammer,* 62 Iowa, 359. This being true, the municipality levying the tax or assessment had the sole direct interest in the performance of the promise. I do not wish to be understood as saying that in every case of a promise made for the benefit of a third person the latter will have a right of action thereon. But where a fund is given the promisor, and in consideration thereof he promises to pay out of it some obligation, present or future, of the promisee to a third person, such third person may sue thereon as being directly interested therein. Out of the multiplicity of conflicting cases on this subject I shall content myself with citing but one other in support of the proposition last stated: *Washburn v. Investment Co.* 26 Or. 436 (38 Pac. Rep. 620). The conclusion I reach is that the judgment of the trial court should be AFFIRMED.

LADD, J., concurs in this dissent. GRANGER, C. J., not sitting.