**JOHNSON FARM EQUIPMENT COMPANY, an Illinois Corporation, Appellant,**

v.

**Wayne G. COOK, Charles Blair, Bernard F. Balluff and John E. Nagle, Associated as Cook, Blair & Balluff, a Co-Partnership, Appellees.**

No. 15312.

United States Court of Appeals
Eighth Circuit.

Feb. 24, 1956.

--◆--

William D. Johnson, Streator, Ill., for appellant.

Wayne G. Cook, Davenport, Iowa, (John E. Nagle, Walter A. Newport, Jr. and Cook, Blair & Balluff, Davenport, Iowa, with him on the brief), for appellees.

Before WOODROUGH, JOHNSEN and VOGEL, Circuit Judges.

JOHNSEN, Circuit Judge.

This is a suit, under Iowa law, for a recovery in the nature of conversion.[1] The appeal is by the plaintiff, from the entering of a summary judgment for the defendants.

Plaintiff, an Illinois manufacturer of farming equipment, had shipped some items, of the value of $4585, to an Iowa dealer, under an arrangement whereby title was retained by the manufacturer but release would be made by it of such items as the dealer was from time to time able to sell. Defendants were at the time general attorneys for the dealer.

In its aspect most favorable to plaintiff here, the complaint made a general charge that defendants had had their client give them possession and joint control of the equipment; that plaintiff had made repeated demands upon both the client and defendants for a return of the property to plaintiff, but defendants had refused all of these demands; and that defendants thereafter, while thus keeping possession and control of the equipment, had improperly failed to care for it and allowed it to remain exposed to the elements and to deteriorate, with the result that, when they ultimately were willing to surrender it to plaintiff, it had become utterly unsalable and wholly valueless, and was unacceptable to plaintiff, so that what defendants had done had amounted, in its nature and effect, to an appropriation of the property as against plaintiff.

There was explanatory allegation to the effect that defendants had originally come into possession of the equipment by causing a wrongful attachment to be made of it on behalf of their client, through an Iowa state court, and having the sheriff and their client give them possession and control of the property; that about a year later an agreement had been entered into between plaintiff and defendants' client that the equipment would be allowed and should be undertaken to be sold, with the proceeds to be held by defendants until disposition of the attachment suit referred to, and with defendants then to make distribution "in accordance with the order of court or the terms of the settlement agreement"; that, in the carrying out of this arrangement, "defendants agreed to act as agents for both parties in conserving whatever might be realizable from a sale of said property", and some sales were thereafter made "under the direction of defendants", in the amount of $1179, but such sales necessarily ceased when the equipment "became unsalable due to deterioration", (a condition for which, as has been indicated, plaintiff claimed that defendants were responsible); that defendants' client had subsequently directed defendants, and plaintiff also had made demand upon them, to turn over the $1179 to plaintiff, but defendants had wrongfully refused to do so; and that "because thereof plaintiff charges defendants with being guilty of having converted said cash to their own uses, as bailees".

The prayer of the complaint was for a judgment against defendants, "in a sum equal to the full value of said equipment ($4585), which would include any cash

---

1. Another theory of recovery was also attempted to be set up in the complaint, but for purposes of the result here reached it is unnecesary to note or consider that part of the complaint in any way.

items turned over to defendants as bailees for plaintiff, proceeds derived from the sale of a portion of said equipment". Thus, the effect of what has been above set out from the complaint was to make assertion against defendants of a claim in the nature of conversion on their part, as to equipment of the value of $3406, and as to cash in the amount of $1179.

Defendants filed an answer, making denial of any conversion by them, and further denying that they had ever in fact had possession or control of the property, as a basis on which to rest a conversion, or that they had at any time had a responsibility of any nature for the care, condition or effecting of a sale of the equipment, or that, as a matter of fact, any demand ever had been made upon them by plaintiff for a return of the property. Admission was made that they were holding the sum of $1179.11, "as escrow agent", but it was alleged that they could not yet, with impunity, release these funds to plaintiff (although they later paid the money into court in connection with their attempt to get the court to enter a summary judgment for them).

In essence, the defenses made were that defendants had had nothing to do with plaintiff's property, except as attorneys for their client and as escrow agent for the proceeds of the equipment sold; that all of their actions in the situation had been within the scope and proprieties of these relationships; and that, beyond this, there had never been any demand made upon them which could afford the basis for a claim of conversion, either of the equipment or of the money held by them.

Subsequently, as has been noted, defendants filed a motion for summary judgment, alleging that there was no genuine issue as to any material fact in the situation, and that they were entitled to a judgment as a matter of law.

The allegations of the complaint and the denials of the answer gave rise on their face to such seemingly material and normally triable issues of fact, on the conversion of equipment claimed, as whether defendants had in fact taken and held possession and control of the property; whether, if they had, plaintiff was in the situation entitled to its return and had made proper demand upon them therefor; and whether, if defendants had thus held possession and control, they also had irresponsibly subjected the equipment to a lack of protection and caused it to become valueless, so that, at whatever time plaintiff might have had a right to its return, their inability then to restore it, except as worthless junk, could perhaps have amounted, in its effect and circumstances, to an appropriation of the property as against plaintiff. The same would in general appear to be true also as to the question whether defendants' refusal, up to the time of their depositing of the money in court for purposes of their motion for summary judgment, to turn over to plaintiff, on the basis of their client's direction, the $1179 proceeds of the equipment which plaintiff had permitted to be sold, had been one of good faith and warranted precaution in their capacity of holder, so that their refusal had not had the effect of a conversion of the funds and would not leave them with a liability for the payment of interest on account thereof.

And if the issue of conversion could in any way be controlling of plaintiff's asserted right to a recovery, the showing made in support of the motion for summary judgment was not capable, on its nature and substance, as appearing in the printed record, of having transformed the underlying questions of fact which have been referred to above into matters which might, without a trial, be resolved by a court as a matter of law. Thus, any acceptance, for purposes of the motion for summary judgment, of the truth of the statements in defendants' affidavits, that they had never had possession or control of the property, or that their only actions in the situation had been in the capacity and bounds of

attorneys representing their client, or that plaintiff had "made no demands upon defendants for a return of said property" as a foundation for a conversion, would, on the issues framed and the showing attempted in relation thereto, have amounted simply to the making of a credibility evaluation, in which, of course, a court is not at liberty to engage for purposes of a summary judgment.

But it is not necessary here to discuss the situation further from this standpoint, because the court did not purport, and apparently did not regard itself as entitled, to enter summary judgment in relation to these conversion questions. Rather, it concluded that, despite the issues which had been framed by the parties on the question of conversion liability, and despite the unabsoluteness in which the facts underlying those issues had been left by the showings on the motion for summary judgment, defendants could not in any event be held to have a possible legal liability to plaintiff in the situation, in view of the provisions of an agreement entered into between plaintiff and an intervener in the suit in which defendants had originally, on behalf of their client, caused attachment to be made of the equipment involved.

■ This agreement between plaintiff and the intervener was not set up as a defense or bar in the answer of defendants, but it is included in the disorganized miscellany of showing and countershowing, appearing in the printed record, which the parties apparently had placed before the trial court on the motion for summary judgment. None of this miscellany, however, makes wholly clear the circumstances underlying the agreement or the purpose intended to be served by it. There are some fragments of deposition testimony and extraneous correspondence in it, which tend to point to the existence of certain facts, though not in the degree of legal absoluteness necessary for their acceptance on motion for summary judgment. But any implications which they contain favorable to plaintiff are of course entitled to be accepted here in their full, possible significance, in testing whether the court could properly make summary disposition of the suit as a matter of law.

We thus gather that, after the institution of the attachment suit by defendants' client, plaintiff entered its appearance and asserted a counterclaim; that the suit dragged on for a number of years, during which defendants' client became insolvent and made an assignment for the benefit of creditors other than plaintiff; that those interested in having the assignment carried out apparently desired to keep the attachment suit and the counterclaim of plaintiff hanging in suspense, until the assignment had ceased to be vulnerable against any possible bankruptcy attack on the part of plaintiff for improper preference; that the intervener referred to was such an interested party; and that the agreement relied upon by the trial court was one which had been made at the time that plaintiff ultimately obtained a judgment in the attachment suit, on its counterclaim, against defendants' client.

The agreement itself provided that the intervener would dismiss the petition of intervention which he had filed; that plaintiff would "not take judgment in excess of $4585.00" in the suit; and that plaintiff would "look only to escrow fund and surety company on attachment bond for payment of judgment that the court may enter".

The trial court, in its memorandum opinion, said, in substance, that the present suit was one for the collection and payment of the judgment which plaintiff had so obtained; that the contract with the intervener precluded plaintiff from looking to anything else except the escrow fund and the attachment bond for the payment of its judgment; that defendants were entitled to have the contract held to be one that had been made for their benefit; that "A contract for the benefit of a third party is recognized by Iowa law as an enforceable agreement"; that there could therefore be no possible liability on the part of defend-

ants in the situation, except to account for the proceeds of the escrow fund; and that the question of their liability in this respect had solved itself by defendants having made payment, in connection with their motion for summary judgment, of the $1179.11 in their hands, into the registry of the court.

■ It is the general rule in contract law that a third party may enforce a promise as having been made for his benefit, if it appears from the face of the promise or in the light of the contracting situation that he was intended in fact to be a donee beneficiary of the promisee, or—when the situation is one in which no intention to make a gift appears—if the promise has the effect as a matter of law, from the nature of its obligation, of according recognition to him, whether directly or by sound implication, as a creditor beneficiary of the promisee, so that in either situation he stands in the position of necessarily being more than a mere incidental beneficiary as to the promisor's performance. 2 Williston on Contracts, Rev.Ed., § 356, pp. 1041, 1042.

■ He is entitled to be regarded as a donee beneficiary, only "if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary." Restatement, Contracts, § 133(1) (a).

■ Similarly, he can be held to be a creditor beneficiary only if, where he is outside the definition of a donee beneficiary, "performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, or a right of the beneficiary against the promisee which has been barred by the Statute of Limitations or by a discharge in bankruptcy, or which is unen-

forceable because of the Statute of Frauds". Id., § 133(1) (b).

■ If he is not able to establish his qualification under the contract, as a donee beneficiary from factual intention on the part of the promisee, or as a creditor beneficiary from legal recognition made by the promisor, he must be regarded as a mere incidental beneficiary, having no right to a performance of the agreement. Id., §§ 133(1) (c), 147; 12 Am.Jur., Contracts, § 282, p. 834. Or, as sometimes loosely expressed, for one to be able to avail himself of a promise in an agreement to which he is not a party, "he must, at least, show that it was intended for his direct benefit", in either all or part of its contemplated performance. German Alliance Ins. Co. v. Home Water Supply Co., 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195; Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 307, 48 S.Ct. 134, 72 L.Ed. 290.

■ Iowa law does not go beyond the principles which have been stated, in its recognition of third-party rights. The Iowa Supreme Court has specifically held that an incidental beneficiary can not claim any right to the performance of a contract between other parties. Casey v. Jesup Creamery Co., 224 Iowa 1094, 278 N.W. 214; Chicago, R. I. & P. Ry. Co. v. City of Ottumwa, 112 Iowa 300, 83 N.W. 1074, 51 L.R.A. 763; German State Bank v. Northwestern Water & Light Co., 104 Iowa 717, 74 N.W. 685. "* * * contracts made between two parties for the benefit of a third are enforceable by the latter under certain conditions. Among these conditions is * * * that the contract was made for his express benefit. That he might incidentally benefit by the contract * * * is not determinative of the question at all." Casey v. Jesup Creamery Co., supra, 278 N.W. at page 215.

■ Some of the Iowa cases have engaged in even more restrictive expression as to the application of the principles which we have set out. "To enable a third party to sue upon such a contract,

it must have been made for his benefit; and if its primary object was to subserve the interests of one or both of the parties to the contract, they alone can maintain an action thereon for its breach." Messenger v. Votaw, 75 Iowa 225, 39 N. W. 280, 281. And the German State Bank case, supra, 74 N.W. at page 686, went so far as to declare that "The principle (that one may sue upon a promise made to another for his benefit) is * * * confined to cases where the person for whose benefit the promise is made has the sole, exclusive interest in its performance."

Defendants do not contend that they were in the position of a creditor beneficiary of the intervener, in relation to the promise of plaintiff that it would "not take judgment in excess of $4585.-00" on its counterclaim against defendants' client, and that it would "look only to escrow fund and surety company on attachment bond for payment of judgment that the Court may enter". Nor would it have been possible, on the record before us, for the court to have held as to the defendants that "performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary", within the expression of the principle contained in the Restatement, supra, or under the recognition of creditor-beneficiary status made by the Iowa cases, such as Runkle & Fouse v. Kettering, 127 Iowa 6, 102 N.W. 142; Knott v. Dubuque & S. C. Ry. Co., 84 Iowa 462, 51 N.W. 57.

If therefore, the court was entitled to enter summary judgment on the agreement, as it did, it was only because it could properly, as a matter of law, and without the light of a trial, view defendants as having been intended to be made, and as constituting, a donee beneficiary of the intervener, under the language and contracting situation of the parties. But the language and the contracting situation, insofar as the latter has been made to appear in the record. would not in our judgment permit of such a finding or conclusion as a matter of law.

The fragmentary deposition testimony in the record of the intervener's attorney, by whom the agreement had been drawn, tends to show that his only concern in the matter at the time had been to protect his own client (whether a creditor, the auctioneer, or the purchaser of the assets covered by the assignment made by defendants' client for the benefit of its creditors other than plaintiff, is not made clear) against any attack upon the assignment or any attempt on the part of plaintiff to reach the assets covered thereby; that there had been no mention made of the defendants or "about protecting them", in the parties' making of the agreement; that he had knowledge at the time that plaintiff "had some equipment which was tied up" and assumed that plaintiff was "either entitled to get it back or have some damages"; and that it was his thought and purpose that "the Corporation (not shown whether this was a creditor, the auctioneer, or the buyer of the assigned assets) would be protected if (plaintiff) got back (its) property".

This is all that the record contains as to the circumstances of the making of the agreement. The court thus had nothing other than the language of the contract itself, on which to rest a determination that defendants were intended to be a donee beneficiary of the agreement, as a matter of safeguarding them against any possible claim on the part of plaintiff from a holding of the equipment by them. And, as to the language of the contract, since defendants were not a party to the agreement, plaintiff could not, of course, be precluded on a trial from showing by parol, as the deposition of the intervener's attorney might be accepted as doing, that the expression "look only to escrow fund", as used between the intervener and plaintiff, was not intended by them to have any literal significance but was merely a term of generic, descriptive convenience, in distinguishing the property of plaintiff which had been taken and held against it and the assets of defendants' client which had been assigned for the

benefit of other creditors, and that the term was as much intended to leave plaintiff with its rights as to the equip-ment which had not been sold, as to the proceeds of that which had been disposed of. Lanz v. Schumann, 175 Iowa 542, 154 N.W. 911; Nissen v. Sabin, 202 Iowa 1362, 212 N.W. 125, 50 A.L.R. 1216; Kiser v. Morton Farmers' Mut. Ins. Ass'n, 216 Iowa 928, 249 N.W. 753.

In the case of Preston v. Howell, 219 Iowa 230, 257 N.W. 415, 418, 97 A.L.R. 1140, (cited by the trial court in support of its conclusion that defendants legally had such rights under the agreement between plaintiff and the intervener as entitled them to claim the benefit of the agreement) the bondholders of a corporation had sought to hold the directors of the corporation personally liable for having consented to the issuance of such bonds in an amount exceeding the indebtedness to which the Iowa statutes permitted the corporation to subject itself. Recovery was denied upon the ground that, in their purchase of the bonds, the bondholders had expressly made themselves a party to an agreement that " 'the holder * * * shall not have any claim based upon said bond * * * against any * * * director, past, present or future of the Company, all such liability being by the acceptance of any bond or bonds as part of the consideration for the issuance thereof, expressly released' ". This agreement was held to be a legally valid one and to have clearly been made for the benefit of the directors, so that they were entitled to have it enforced.

■ Different than in the present situation, the contract relied upon by the directors both expressly made reference to them and set out the scope of the rights which they were being accorded. There thus hardly could, if the agreement was a valid one under Iowa law, be any room to contend that the directors had not been intended to be made donee beneficiaries of the promisee. Here, the terms of the promise, in the light of the accompanying circumstances, to the extent that those circumstances have been made to appear in the printed record, afforded no basis for a holding as a matter of law that one of the purposes of the intervener in obtaining the promise had been to make defendants a donee beneficiary of plaintiff's obligation. All that defendants properly, on the present record, could legally be declared to be would be an incidental beneficiary.

The judgment must accordingly be reversed, and the cause remanded for further proceedings. Some other questions have been attempted by plaintiff to be raised before us, such as whether it is entitled to interest from defendants upon the $1179 paid into court, until such funds were deposited therein, and whether it can be required to pay the cost of some depositions initially taken by it but ordered by it not to be transcribed. These questions were not ruled upon by the trial court; nor do we think that they are capable of legal answer without development of the facts related to them; and the record before us is not such as soundly to permit of their resolution. They will accordingly be left to the disposition of the trial court in the proceedings on remand.

■ From the tenor of their brief, defendants apparently are convinced that on a trial plaintiff will not be able to obtain a recovery against them. But even if this should be true, it would not entitle us to affirm the summary judgment which has been entered. As we said in Sprague v. Vogt, 8 Cir., 150 F.2d 795, 801, "That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them".

Reversed and remanded.